Julio **ORTIZ MERCADO**, et al., **Plaintiffs,**

v.

**PUERTO RICO MARINE MANAGEMENT, INC.,** etc., **Defendants.**

**Civ. No. 87–588 HL.**

United States District Court, D. Puerto Rico.

May 9, 1990.

---

Harry Anduze Montaño, Santurce, P.R., for plaintiffs.

Mayo & Mayo by Gilberto Mayo Aguayo, Santurce, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

■ Before this Court is a discovery issue arising from a non-party witness' refusal to comply with a subpoena duces tecum served by plaintiffs on June 12, 1989.[1] With this order, the Court will put to rest various pending motions which have sprung from this discovery conflict. First, non-party witness, Mr. Ferdinand Bonilla[2] has filed a Motion to Quash Deposition Subpoena (Docket No. 42), and the plaintiffs have opposed. At the heart of Mr. Bonilla's motion and subsequent motions, is Mr. Bonilla's challenge of diversity jurisdiction.[3]

Prior to Mr. Bonilla's filing the motion to quash, this Court had granted plaintiffs' motion requesting an order to compel the discovery documents in issue. (*See* Docket No. 41). In response to a motion to reconsider filed by Mr. Bonilla, and plaintiffs' opposition thereto, this order to compel has been held in abeyance until the issues in the motion to quash are resolved. (*See*

Docket Nos. 44, 45, 56). Since the order of abeyance, the Court has ordered Mr. Bonilla to produce the documents in issue for in camera inspection. (*See* Docket No. 51). The Court has also ordered the parties, including Mr. Bonilla, to brief and submit documentary evidence on the issue of codefendant Puerto Rico Marine Management's (PRMMI) principal place of business, in order for the Court to determine if complete diversity exists.

■ Where there is a question of subject matter jurisdiction, we are bound to address this threshold issue before proceeding to the merits of the pending motions. (*See* Docket No. 56). The parties have responded to the Court's order, and PRMMI has filed a motion to dismiss for lack of diversity jurisdiction.

We find for the reasons below that complete diversity exists between the parties. We then proceed to resolve the merits of Mr. Bonilla's Motion to Quash.

## I. Diversity Jurisdiction

Plaintiffs filed this action on May 4, 1987, based on diversity jurisdiction, 28 U.S.C. sec. 1332. Plaintiff Julio Ortiz Mercado alleged that PRMMI unlawfully breached his employment contract when beginning in April, 1985, it demoted him from his position of vice president of finance and administration and finally dismissed him on

---

1. After a series of unfruitful negotiations through letters and meetings between Mr. Bonilla and plaintiffs regarding Mr. Bonilla's objections to the subpoena, plaintiffs issued a new notice of taking deposition and subpoena tecum to Mr. Bonilla on August 14, 1989. The same documents in issue were requested, and Mr. Bonilla began seeking this Court's help in his refusal to comply. *See* Local Rule 311.11.

2. Mr. Bonilla is the secretary of the Board of Directors of Puerto Rico Marine Shipping Authority ("PRMSA"), a government agency of which co-defendant Puerto Rico Marine Management, Inc. ("PRMMI") is a privately owned operational and management arm. PRMSA is not a defendant in this action. For the history of PRMSA's former ownership of PRMMI and PRMMI's subsequent privatization in 1985, from which the present case developed, *see McCrillis v. Autoridad de las Navieras de Puerto Rico,* 89 J.T.S. 6 (1989).

3. Plaintiffs have vigorously argued that Mr. Bonilla lacks standing to object to diversity jurisdiction. There is no need to address this objection because even if it had merit, this Court may resolve a subject matter jurisdiction issue at any time either by motion of the parties or *sua sponte. Crawford v. U.S.,* 796 F.2d 924 (7th Cir.1986); *White v. All American Cable & Radio, Inc.,* 642 F.Supp. 69, 71 (D.P.R.1986). However, the Supreme Court has ruled that a non-party witness has standing to challenge the district court's subject matter jurisdiction in defense of civil contempt citations for failing to comply with discovery orders. The Court's holding is based on the premise that a district court's subpoena power is no more extensive than its jurisdiction. *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).

July 5, 1986 in violation of Puerto Rico law, 31 L.P.R.A. sec. 3371 *et seq.*

■ Plaintiff Ortiz Mercado carries the burden of proving facts sufficient to support a finding of diversity of citizenship, determined as of the date of initiation of suit. *Topp v. CompAir, Inc.*, 814 F.2d 830, 832 n. 1 (1st Cir.1987).

■ Ortiz Mercado is a citizen of Puerto Rico. He named as defendants PRMMI, their parent company, and various executive officers. Complete diversity must exist between all the named defendants and the plaintiffs in order to maintain a diversity action. *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Non-party witness Mr. Bonilla and codefendant PRMMI maintain that PRMMI's principal place of business is Puerto Rico, and therefore diversity is destroyed.

■ For the purposes of diversity jurisdiction, a corporation is a citizen of the state of incorporation and of the state where it has its principal place of business. 28 U.S.C. sec. 1332(c). Ortiz Mercado named PRMMI's place of incorporation and principal place of business as New Jersey.[4] He argues that PRMMI's principal place of business should be determined by the "nerve center" test, which is one of the three legal tests recognized by the First Circuit. *Topp*, 814 F.2d at 834 (citing *de Walker v. Pueblo International, Inc.*, 569 F.2d 1169 (1st Cir.1978)).

■ The First Circuit also recognizes the "center of corporate activity" test, i.e.

where the corporation's day-to-day management takes place, and the "locus of the operations of the corporation," test, i.e. where the bulk of the corporation's actual physical operations are located. *Topp*, 814 at 834. *See also Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3rd Cir. 1960) (establishing the "center of activity" test); *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490 (S.D.N. Y.1963) (formulating the "locus of operations" test). Mr. Bonilla and PRMMI argue that the "locus of operations" test should be followed, and that the bulk of PRMMI's operations are in Puerto Rico.[5]

■ This is a difficult issue because depending on whether we apply the "nerve center" test or the "locus of operations" test, we reach different conclusions as to PRMMI's principal place of business. After careful consideration of all the evidence, we find the "nerve center" test the most appropriate to this case.[6]

Mr. Bonilla and PRMMI have submitted evidence that the majority of PRMMI's physical operations are in Puerto Rico. PRMMI is a private management company in the maritime industry, and as of 1985, its principal business is to act as the exclusive agent of Puerto Rico Maritime Shipping Authority ("PRMSA"). PRMMI operates out of more than twenty ports in the Caribbean and the East coast, but Puerto Rico handles the largest volume of outbound/inbound movement of vans and vehicles. (*See* Exhibit 1 of PRMMI's Memorandum in Support of Motion to Dismiss). Also the largest volume of cargo, revenues, employees is handled by the Puerto Rico port.

---

**4.** Plaintiffs later submitted documentary evidence showing that the state of incorporation of PRMMI is Delaware. *See* Exhibit B of plaintiffs' Brief in Support of Diversity Jurisdiction.

**5.** In his Motion to Quash, Mr. Bonilla relies heavily on the unpublished opinion in *Rodríquez García v. Esteban Dávila*, Civ. No. 87–1411(JP), 1988 WL 124046 in which the district court "found" that PRMMI's principal place of business was Puerto Rico. We are not bound by such findings, especially where the district court in *Rodríquez García* did not make such finding through any analysis and application of the legal tests required by the First Circuit for

determining principal place of business. The district court in *Rodríquez García* appears to have accepted as true the plaintiff's allegations that Puerto Rico was the defendant's principal place of business. *Rodríquez García*, Civ. No. 87–1441 at 6.

**6.** Having found virtually no First Circuit precedent on the "center of corporate activity test," we equate it more with the "tests which tend to focus upon the location of physical operations." *Topp*, 814 F.2d at 834, n. 3. Therefore will not consider it separately from the "locus of the operations" test that PRMMI and Mr. Bonilla urge us to apply.

(*See* Exhibits 2, 3, 4). Clearly if we apply the "locus of operations" test, then Puerto Rico would be PRMMI's principal place of business. *See Grinter v. Petroleum Operation Support Service*, 846 F.2d 1006 (5th Cir.), *cert. denied*, —— U.S. ——; 109 S.Ct. 498, 102 L.Ed.2d 534 (1988).

However, the First Circuit has stated that when dealing with companies with "complex and farflung activities" the nerve center test is the appropriate test to apply. *Topp*, 814 F.2d at 834; *Lugo–Viña v. Pueblo Intern., Inc.*, 574 F.2d 41, 43 (1st Cir.1978). The "nerve center is the location from which the corporation's officers direct, control and coordinate all activities without regard to locale, in furtherance of the corporate objective." *Lugo–Viña*, 574 F.2d at 43 (quoting *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959). The nerve center is the center of gravity, the place where most of the higher officers maintain offices, where the policy decisions are made, where the administrative departments are located, and where the last income tax return was filed. *Topp*, 814 F.2d at 834. The nerve center test is particularly applicable to holding companies, but has also been applied to operational companies like PRMMI where several autonomous operational offices report to a central location on matters of general policy and administration. *See Lugo–Viña*, 574 F.2d at 43, n. 2.

 Plaintiffs, who have the burden of proving diversity, have established that while day-to-day decision-making is conducted by the various port offices, PRMMI's home office is located in Edison, New Jersey. It is in New Jersey where the offices of the senior executive officers are located. (*See* Plaintiffs Exhibit F at 80–81; PRMMI's Memorandum at 2). The executive officers perform supervisory functions, including personnel decisions, over all the various ports. (*See* Plaintiffs' Exhibit F at 71–72, 80, 102–104; PRMMI's Memorandum at 3). All budget matters from the various ports are referred to the New Jer-

sey offices. (*See* PRMMI's Memorandum at 3). The offices of the members of the Board of Directors are in New Jersey, and the Board of Directors' meetings have been held there for the past four years. (*See* Plaintiffs' Exhibit E at 7–8). The corporate records and the principal bank accounts of PRMMI are also maintained in New Jersey. (*See* Plaintiffs' Exhibit E at 7–8). Thus New Jersey appears to be the corporate head, the administrative nexus for all of PRMMI's operational ports, and therefore the principal place of business for the purposes of diversity. *See Topp*, 814 F.2d at 837–838.[7]

Having determined that PRMMI's principal place of business for the purpose of diversity jurisdiction is New Jersey, we now address Mr. Bonilla's second argument that diversity is destroyed because plaintiffs failed to name nondiverse parties: PRMSA and its executive director, as indispensable parties. We disagree with Mr. Bonilla's argument for the following reasons.

 A federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy. *Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980); *Walpa Construction Corp. v. Mobile Paint Mfg. Co., Inc.*, 701 F.Supp. 23, 28 (D.P.R.1988). A real party in interest is one who has a substantial interest in the outcome of the litigation. *See H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 992–93 (1st Cir.1986). Diversity jurisdiction will not be ousted where the nondiverse party is not indispensable, for example, under Fed.R.Civ.P. 19, or not essential, or who is merely necessary, or has no actual interest in the controversy. *See* Fed.Proc., L.Ed., sec. 1:211.

 Mr. Bonilla argues that at the time of Ortiz Mercado's hiring, PRMMI was a wholly owned subsidiary of PRMSA, and that Mr. Esteban Dávila, executive director of PRMSA, acted on behalf of

---

7. The officials of PRMMI also named as defendants all reside in New Jersey and therefore complete diversity exists. However, actions against persons in their official capacity are based on the statutory citizenship of the entity they represent. *See* Fed.Proc., L.Ed. sec. 1:218.

PRMMI in hiring Ortiz Mercado, and therefore both are indispensable parties and should be joined under Fed.R.Civ.P. 19(b). However, the fact that PRMMI was a subsidiary does not make the parent company, PRMSA, indispensable. Subsidiaries are generally considered to be separate entities for diversity purposes, even if the parent exerts a high degree of control through ownership. *U.S.I. Properties Corp. v. M.D. Constr. Co., Inc.*, 860 F.2d 1, 7 (1st Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1988); *Topp,* 814 F.2d at 836. Also, at the time the complaint was filed which is the point from which jurisdiction is evaluated, PRMMI had been privatized and was a separate entity from its former government parent corporation, PRMSA.

■■■ Mr. Bonilla has not produced any evidence of any substantial interest PRMSA may have if judgment were rendered for the plaintiffs, or how PRMSA's absence would be prejudicial to either PRMSA or PRMMI. *Pujol v. Shearson American Exp., Inc.*, 877 F.2d 132, 134 (1st Cir.1989). From the record, we cannot find any equitable reason why this suit should not go forward without PRMSA or its executive official. *Id.* at 134.

## II. Motion to Quash

Having determined that complete diversity exists between all the original parties, we turn now to Mr. Bonilla's remaining objections to the order compelling him to produce documents under his custody.

The June 12, 1989 subpoena duces tecum compels Mr. Bonilla, the Secretary of the Board of Directors for PRMMI's former parent company, PRMSA, to turn over a series of documents related to the sale of PRMMI in 1985. The documents in issue include: 1) minutes of all PRMSA Board of Directors' meetings of two months prior to the sale of PRMMI which are relevant to the sale; 2) the sale agreement; 3) subse-

quent management agreements between privately owned PRMMI and PRMSA; 4) minutes of the Board of Directors two months prior to the above management agreements which are relevant to the agreements; 5) minutes of all Board of Directors meetings in which the sale of PRMMI in 1986 to its present parent company were discussed; 6) all documents reflecting salaries of every executive officer of PRMMI; 7) disclosure statements filed by the executive officers of PRMMI since 1980; and 8) all letters of resignation, dismissal or demotion of executive officers since 1980.

Mr. Bonilla has submitted to the Court all of the above documents which he had in his possession for in camera inspection. After consideration of the evidence and arguments of the parties, this Court finds that these documents are discoverable under Fed.R.Civ.P. 26(b)(1).

### a. *Privilege*

Mr. Bonilla contends that the minutes of PRMSA Board of Directors' meetings are privileged trade secrets and official information under Puerto Rico Rules of Evidence 30 and 31.[8] He argues that the Board of Directors' minutes and the sale and management contracts contain financial statements and discussions of rates, planning of new markets, labor-management relations, and sales and acquisition of assets, which PRMSA's competitors could use against them. He also argues that the information is privileged governmental information.

■■■ First, after full inspection, we find that the sale and management agreements and their amendments between PRMSA and PRMMI's parent companies and between PRMMI and PRMSA, do not divulge any imformation protected as a trade secret under Rule 30, 32 L.P.R.A. App. IV, R. 30. These contracts are standard industry agreements which merely

---

8. The substantive law of Puerto Rico determines the existence of privileges. Fed.R.Evid. 501; *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); Wright and Miller, *Federal Practice and Procedure,* sec.

2016. Therefore, we will address only the privileges that Mr. Bonilla argues apply to this case, which are recognized under the laws of Puerto Rico.

outline the rights, duties and remedies of the parties. They discuss no specific trade information which competitors could exploit to the detriment of PRMSA. While the minutes of the Board of Directors' meetings discuss more specific information regarding the operations of PRMSA, after careful inspection this Court has found no information which could constitute trade secrets for the purpose of Rule 30.

 Second, in determining if the documents are privileged as official information, Puerto Rico law formulates a balancing test in the absence of special legislation protecting the information. *See Santiago v. Bobb*, 117 D.P.R. 153, 165–166 (1986). The Court must weigh the "important or substantial" government interest in nondisclosure of the information versus the right of the citizens to obtain the information. *See Soto v. Giménez*, 112 D.P.R. 477 (1982). The Court must also look to the "totality of the circumstances" of the case before it, and weigh the balancing in favor of disclosure of the information and against the privilege. *Bobb*, 117 D.P.R. at 162. *See also Sierra v. Tribunal Superior*, 81 D.P.R. 554 (1959).[9]

 Again, after assessing the documents in camera, we find that the sale and management contracts are not privileged and do not constitute confidential official information under Puerto Rico law. Mr. Bonilla has not established any substantial or important government interest that nondisclosure of the documents would protect. Nor does he argue that the government agency, PRMSA, executed these contracts in confidence, with the intention that the government would be harmed by their disclosure. Mr. Bonilla has failed to show how the government of Puerto Rico would be prejudiced or how the public would be at risk if the information in the documents is divulged. Having found that the documents do not contain information that competitors could adversely use against PRMSA, we find no other means by which PRMSA or the public sector could

be harmed. Therefore, the right of the plaintiffs to discoverable information for the prosecution of their case prevails.

### b. *Relevance*

 Mr. Bonilla has also attempted to argue that the documents are irrelevant and should be protected from discovery. Plaintiffs claim that the documents are relevant because PRMMI bases its defense of the case on the necessity of firing the plaintiff due to the PRMSA's sale of PRMMI in 1985 and 1986. Plaintiffs also argue that it was during this time that Ortiz Mercado's employment contract was made. Given the broad and liberal scope of discovery formulated by the federal rules, we agree with the plaintiffs.

Rule 26(b)(1) asserts a broad discovery policy, giving parties broad powers to gather information. *In re San Juan Star*, 662 F.2d 108, 115 (1st Cir.1981); Wright and Miller, *Federal Practice and Procedure*, sec. 2007. A deponent may be obliged to reveal information that will not be admissible at trial, and that has not passed the strict threshold tests of relevance and admissibility. *In re San Juan Star*, 662 F.2d at 115. Therefore, in order "to narrow and clarify the basic issues ... and ascertain the facts" "disclosed to the fullest practicable extent," we decline to limit discovery. *In re San Juan Star*, 662 F.2d at 114–115, (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947)).

WHEREFORE, codefendant PRMMI's motion to dismiss for lack of diversity jurisdiction is hereby denied.

The nonparty witness Bonilla's Motion to Quash is hereby denied. The order of abeyance is hereby vacated, and this Court's order to compel of September 11, 1989 is hereby reinstated. The documents

---

9. Usually privileged official information is confidential information regarding diplomatic or military functions of the government. *See* Velázquez Rivera, "Curso sobre evidencia," Ed. Rev.1987, at 16.

submitted to the Court shall be made available to the plaintiffs.

IT IS SO ORDERED.