Lee J. TOPP, Plaintiff, Respondent,

v.

COMPAIR INCORPORATED, Compair Limited, Siebe Plc and E. Barrie Stephens, Defendants, Petitioners.

No. 86–1628.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1986.

Decided March 27, 1987.

Jack B. Middleton with whom Robert E. Jauron, Ralph F. Holmes and McLane, Graf, Raulerson & Middleton, Professional Ass'n, Manchester, N.H., were on brief for defendants, petitioners.

Robert A. Shaines with whom Daniel C. Hoefle and Shaines & McEachern Professional Ass'n, Portsmouth, N.H., were on brief for plaintiff, respondent.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and PIERAS,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an interlocutory appeal taken by defendants below from a decision of the United States District Court for the District of New Hampshire denying defendants' motion to dismiss. Defendants had

* Of the District of Puerto Rico, sitting by designa-

moved to dismiss for lack of complete federal diversity jurisdiction because plaintiff and one of the defendants, CompAir Inc., were allegedly both citizens of New Hampshire. The court disagreed, finding that CompAir Inc. is not a citizen of New Hampshire and ruling, therefore, that there was complete diversity of citizenship.

This action was brought in federal court by Lee J. Topp alleging breach of contract, wrongful termination of employment and tortious interference with contractual relations against the defendants: CompAir Inc.; CompAir Ltd.; Siebe plc; and E. Barrie Stephens. Defendant CompAir Ltd., a United Kingdom corporation, is a large parent corporation with many wholly owned subsidiaries. One of those subsidiaries is CompAir Inc., the defendant that is the focus of the diversity of citizenship controversy. CompAir Inc. is incorporated in Delaware. It provides administrative and financial services such as insurance, loans and car rentals for itself and for its operating subsidiaries located in five states. It maintains an office and conducts some business activities in Kingston, New Hampshire.

CompAir Ltd.—the parent corporation of CompAir Inc.—was in turn wholly owned by Imperial Continental Gas Association, a United Kingdom company. In July 1985 Imperial Continental Gas sold the stock of CompAir Ltd. to Siebe plc, another defendant in this case. Siebe plc is a United Kingdom corporation whose chief executive officer is E. Barrie Stephens, another defendant in this case.

Plaintiff Lee J. Topp is a citizen of New Hampshire. Until his discharge, he was the president of CompAir Inc. He was also one of the directors of CompAir Ltd.—the parent corporation. As president of CompAir Inc., he oversaw the operations of CompAir Inc. and its various subsidiaries in the United States. As a director of CompAir Ltd., he had oversight responsibilities for other subsidiaries owned by CompAir Ltd. On August 1, 1985, E. Barrie Stephens called Topp at Topp's office in Kingston, New Hampshire, and informed him

tion.

that as of August 31, 1985 he would be discharged from his positions as president of CompAir Inc., and director of CompAir Ltd. Stephens asked Topp to remain in his position as president of CompAir Inc. through August 31, 1985.

■ On August 30, 1985 Topp filed this suit[1] alleging wrongful termination. The original complaint recited that plaintiff is a citizen of New Hampshire and that, inter alia, defendant CompAir Inc. is a corporation organized under the laws of Delaware, with a principal place of business at Kingston, New Hampshire. Defendants moved for dismissal because of a lack of complete diversity since plaintiff and one defendant were both residents of New Hampshire. *See* 28 U.S.C. § 1332(c) (1982) (for purposes of diversity jurisdiction, corporation is a citizen of state of incorporation and of the state where it has its principal place of business); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) (statute requires complete diversity; each defendant must be a citizen of a different state than each plaintiff's state).

■ Subsequently, Topp amended his complaint, deleting the statement that New Hampshire was CompAir Inc.'s principal place of business. The amended complaint stated that CompAir Inc. is a Delaware corporation doing business in New Hampshire, Maine, Michigan, Florida and California.[2] Defendants pressed their claim that there was a lack of complete diversity, insisting that CompAir Inc.'s principal place of business is New Hampshire, and thus it is a citizen of New Hampshire.

The district court received supporting affidavits and held a hearing on the diversity of citizenship issue. The court, concluding that CompAir Inc. was not a citizen of New Hampshire, stated,

> Thus, where the corporation is a holding company or part of a large corporate enterprise, the "nerve center" test is most appropriate. Even in the case of an operating company, the principal place of business may be deemed to be the location from which the corporation is run, i.e., where the major business decisions are made.

> The evidence is fairly clear that, to use the vernacular, "the shots were called from England." The proof of this was the circumstances surrounding the firing of the plaintiff by E. Barrie Stephens, who had never met the plaintiff. It was the company in England that made the major business decisions, including hiring and firing of employees of CompAir Inc. and other subsidiaries.

In response, defendants filed a motion for reconsideration, arguing that the evidence was insufficient to support the piercing of the corporate veil between CompAir Inc., and its parent companies CompAir Ltd. and Siebe plc. The district court asked defendants to submit additional evidence to show that CompAir Inc. main-

**1.** Citizenship, for purposes of establishing diversity jurisdiction, is determined as of the date of initiation of suit. *See Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Lugo-Vina v. Pueblo International, Inc.*, 574 F.2d 41, 42 n. 1 (1st Cir.1978). Here, since suit was filed on August 30, 1985, the citizenship of CompAir Inc. will be determined as of that date.

**2.** The amended complaint is facially defective since it recites no principal place of business of CompAir, Inc. Fed.R.Civ.P. 8(a)(1) (pleadings must allege "grounds upon which the court's jurisdiction depends"). *See also Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 634 n. 18 (5th Cir.1985) (pleading that did not set out corporation's principal place of business and state of incorporation failed to establish diverse citizenship); *Carolina Casualty Insurance Co. v. Insurance Company of North America*, 595 F.2d 128 (3d Cir.1979) (pleading which failed to state principal place of business of defendant corporation did not establish jurisdiction). Such a defect is not usually fatal because 28 U.S.C. § 1653 (1982) allows the amendment of defective allegations of jurisdiction in the trial or appellate courts. This section is normally construed liberally so as to avoid dismissals on technical grounds. *Miller v. Davis*, 507 F.2d 308, 311 (6th Cir.1974). Thus, if plaintiff, through his evidence, had established that CompAir Inc.'s principal place of business is in a state other than New Hampshire, this court could have allowed plaintiff to amend his complaint. *See Kelly v. Kentucky Oak Mining Co.*, 491 F.2d 318 (6th Cir.1974); *Baer v. United Services Automobile Association*, 503 F.2d 393 (2d Cir.1974).

tained its own accounting systems, records, operating, purchasing and sales staff in New Hampshire. In response, defendants produced the affidavit of C. Perry Harrison, the secretary/treasurer of CompAir Inc., which stated,

On August 30, 1985 CompAir Inc. separately maintained its own general ledger at its Kingston, New Hampshire offices, had its own accounting system, and maintained several bank accounts, including a benefits plan account, a money market account, and operating account, a payroll account, and an English pound account, all managed from the Kingston [New Hampshire] office in the name of CompAir Inc.

CompAir Inc. has filed its own federal and state unemployment taxes, social security contributions, and excise taxes. Such filings recite Kingston, New Hampshire as the address of the corporation.

CompAir Inc. maintained its executive offices in the Kingston, New Hampshire facility owned by CompAir Inc.'s subsidiary, CompAir Kellogg Inc. CompAir Inc.'s offices were designated as such and constituted a distinct portion of the building.

On August 30, 1985, CompAir Inc. had three paid employees. Lee J. Topp was the President and Chief Executive Officer, Carolyn Morgan was the Secretary, and I was the Vice President and Chief Financial Officer.... [T]he affairs of CompAir, Inc. were executed substantially from CompAir Inc.'s Kingston, New Hampshire offices. Mr. Topp was present at these offices throughout the week ending August 30, 1985.

Because CompAir Inc. is a holding company, CompAir Inc. has no formal purchasing or sales departments. CompAir Inc. sold no products; rather, it performed administrative functions for its subsidiaries which manufactured and sold products. Services, such as insurance, loans, or car rentals, were purchased by CompAir Inc. for itself and its subsidiaries from its Kingston offices.

As Secretary of the corporation, I maintained the corporate minutes book, which was maintained at the Kingston office.

I likewise maintained the register of the unissued shares of stock of CompAir Inc. at the Kingston office.

In addition to its other business activities, CompAir Inc. also acted as a banking exchange for its United States subsidiaries. Subsidiaries of CompAir Inc. could, and did, on numerous occasions borrow money from CompAir Inc. CompAir Inc. would obtain the money by making available its excess cash, by borrowing excess cash from other subsidiaries at the prime interest rate, or by borrowing against a three million dollar line of credit it maintained in its name with a bank. By allowing its subsidiaries to borrow at the prime interest rate, CompAir Inc. enabled its subsidiaries to pay lower interest rates than would otherwise be available. By borrowing excess cash from its subsidiaries at the prime rate, CompAir Inc. enabled its subsidiaries to earn more on their money than they would on certificates of deposit.

At the prior hearing held by the district court, the same Mr. Harrison testified that Topp, as president of CompAir Inc., received his paychecks from CompAir Inc. He also testified that generally he dealt with Topp (as president of CompAir Inc.) on financial matters that affected operations, but that when a financial issue went beyond an operational financial matter, he would refer the question to David Cutler, who was the senior financial officer of CompAir Ltd.

Plaintiff Topp continued to insist that CompAir Inc. could not act on financial matters without the express permission of CompAir Ltd., and that CompAir Inc.'s sole function was as a financial conduit for CompAir Ltd. He also insisted that he was actually and always employed by CompAir Ltd., even though he served as president of CompAir Inc.

After receiving this evidence from both parties, the district court reaffirmed its prior order denying the motion to dismiss and stated

While the court reaffirmed its order of January 13, 1986 it is candidly puzzled as the law appears to be in a nebulous area as applied to the facts of this case....

Accordingly the court respectfully requests that the issue of diversity be considered by the First Circuit on interlocutory appeal.

We accepted the interlocutory appeal, finding that the issue of CompAir Inc.'s principal place of business involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b) (1982).

This court has recognized that there are three distinct, but not necessarily inconsistent tests for determining a corporation's principal place of business. *de Walker v. Pueblo International, Inc.,* 569 F.2d 1169 (1st Cir.1978). One is the "nerve center" test which searches for the location from where the activities of the corporation are controlled and directed, *Lugo-Vina v. Pueblo International, Inc.,* 574 F.2d 41, 43 (1st Cir.1978). The two other tests are the "center of corporate activity" test, *i.e.,* where the corporation's day-to-day management takes place, *de Walker,* 569 F.2d at 1172; *Kelly v. United States Steel Corp.,* 284 F.2d 850, 854 (3d Cir.1960); and the "locus of the operations of the corporation" test, *i.e.,* where the bulk of the corporation's actual physical operations are located, *Inland Rubber Corp. v. Triple A Tire Service, Inc.,* 220 F.Supp. 490 (S.D.N.Y. 1963).

■ All three tests tend often to merge and overlap, but the district court was correct in deciding to apply the nerve center test on these facts. It erred, however, in its application of that test by failing to confine itself to locating the nerve center of CompAir Inc.'s own activities. Instead, it inappropriately looked outside the limits of CompAir Inc.'s own corporate operations to those of its parent corporations, CompAir Ltd. and Siebe plc.

The nerve center test was developed in the context of corporations with "complex and farflung activities." *de Walker,* 569 F.2d at 1172. *See Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N. Y.1959). The nerve center is described as "the center of gravity ..., the place where most of the higher officers maintained offices, where the policy decisions were made, where the administrative departments were located, and where the last income tax return had been filed." 1 *Moore's Federal Practice* ¶ 0.77[3.–2], at 717.67 (2d ed. 1986).

In *Lugo-Vina* we acknowledged that the nerve center test may be appropriate in respect to a holding company, 574 F.2d at 43 n. 2, because the test was developed for cases involving corporations with complex and farflung activities where only the nerve center can truly be termed the principal place of business. *Id.* at 43. CompAir Inc. is itself a holding company having four subsidiaries doing business in five states (New Hampshire, Maine, Michigan, Florida and California). Its principal function is to provide administrative and financial services to these operating subsidiaries. As the percentage of CompAir Inc.'s servicing activities devoted to a given subsidiary will vary from time to time, its own nerve center (the location from which CompAir Inc. controls and directs its servicing activities) is the most realistic indication of its principal place of business.[3]

■ While the district court was thus correct in deciding to apply the nerve center test to this holding company, it went further in applying the test than it should. To find the nerve center, it ignored the geography of CompAir Inc.'s operations and settled on the nerve center of the conglomerate of which CompAir Inc. was a part. While the label "nerve center" may seem to imply that the nerve fiber should

---

**3.** CompAir Inc. has no manufacturing, purchasing or sales facilities. Thus tests which tend to focus upon the location of physical operations (*i.e.,* factories, warehouses, sales offices) are not helpful. The "center of corporate activity test," however, would likely result in an analysis and result similar to the one employed here under the rubric of the nerve center test.

be traced to its root, the test does not, in fact, have such radical implications.

The district court found that CompAir Inc. is not a resident of New Hampshire because the "company in England" made the major business decision of firing plaintiff who was president of CompAir Inc. In so finding, the court stated, "The proof of this was the circumstances surrounding the firing of the plaintiff by E. Barrie Stephens, who had never met the plaintiff." The evidence shows, however, that E. Barrie Stephens was not officially affiliated with the defendant at issue, CompAir Inc. Stephens was the chief executive officer of Siebe plc. Siebe plc had just acquired the stock of CompAir Ltd. In turn, CompAir Ltd. was the parent corporation of CompAir Inc. Thus, when it focused on Stephens's acts, the court was not limiting its inquiry to CompAir Inc. Rather, the court was ignoring the corporate separation between CompAir Inc. and its parent, CompAir Ltd. The court went further and ignored the corporate separation between CompAir Ltd. and Siebe plc in order to seize upon the activities of its executive, Stephens. The district court thus applied the nerve center test to the group of separate corporate defendants as a whole, and it decided that the acts of Stephens indicated where the nerve center of this group of corporations was located. In so doing, the court erred because the nerve center test does not grant free license to ignore the separate corporate identity of the corporation whose citizenship is being sought.

Except in rare instances (discussed *infra*), even when a court applies the nerve center test, the inquiry must be limited to an examination of the subsidiary's own activities, officers and facilities.[4] This is not to say that, under this limiting rule, it would inevitably be wrong to find that a corporation organized in Delaware had its nerve center in England. That might occur

if the officers who normally managed the corporation, and the other indices of management, such as corporate books and minutes, the entity's secretariat, employees, bank accounts, and tax filings, were mainly centered in England. But in the instant case, the evidence does not show that the regular elements of CompAir Inc.'s corporate nerve center were located in England.

The fact that a parent corporation—or, as here, a parent of a parent—who, by virtue of interlocking stock ownership controls all of the corporate defendants, is located in England does not demonstrate that the nerve center of the particular corporation at issue is also located there. So long as that corporation is entitled to be viewed as a separate corporate entity, *see infra*, the nerve center test does not search for the locus of its parent corporation, nor of those having the ultimate controlling interests. The test, in other words, does not search out the home of the economic tsar who ultimately dominates, through other corporations or otherwise, the entity in question. Rather, so long as the entity's corporate form is entitled to credibility, the nerve center test looks for the localized nerve center from which the corporation in issue is directly run. If this were not so, every independently incorporated, wholly owned subsidiary which is part of a large conglomerate would be treated (for diversity jurisdiction purposes) as a mere division of a large company rather than a separate corporation.

■ The general rule is that a "subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." 1 *Moore's Federal Practice* ¶ 0.77[1.–2], at 717.10; *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir.1972). As the Third Circuit has observed

---

4. We recognize, of course, that the analysis we prescribe may be accused of overlooking the "real" nerve center, in that only those who control the parent of the corporation in question may, in truth, "call the shots." Perhaps the term "nerve center" is confusing: what is sought, except in rare circumstances where the

corporate veil is properly disregarded, is the operational center of the corporation in question, *giving proper regard to the corporate identity*—not necessarily the ultimate "nerve center," in the sense of the place where the real power resides.

the case law strongly shows that "where the corporate separation between a parent and subsidiary, 'though perhaps merely formal,' is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise." *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 410 (N.D.Cal.1970); *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 [45 S.Ct. 250, 69 L.Ed. 634] (1925).

*ITT Terryphone Corp.*, 461 F.2d at 1142. *But see Toms v. Country Quality Meats, Inc.*, 610 F.2d 313 (5th Cir.1980) (where the court ascribed the acts of one corporation to the defendant corporation at issue).

In *de Walker v. Pueblo International, Inc.*, where the issue was the principal place of business of the parent corporation, this circuit refused to ascribe the activities of a separately incorporated subsidiary to the parent corporation. 569 F.2d at 1173. We there recognized that the method for deciding whether a parent is doing business in a state for the purpose of finding personal jurisdiction can be applied to the analogous issue of determining the principal place of business for diversity jurisdiction. Thus, we relied upon the Supreme Court's observation (in the context of personal jurisdiction) that

> [t]hrough ownership of the entire capital stock and otherwise, the defendant dominates the [subsidiary] corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals.... The existence of the [subsidiary] company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the [parent's] business was doubtless adopted solely to secure to the defendant some advantage under the local laws.... In the case at

bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporation separation, though perhaps merely formal, was real. It was not pure fiction.

*Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335–37, 45 S.Ct. 250, 250–51, 69 L.Ed. 634 (1925).

In *de Walker*, following the approach set out in *Cannon Manufacturing*, we held that the district court had erred in piercing the corporate veil between the parent and subsidiary even though the parent corporation routinely included the subsidiary's figures in its calculations of overall profits, losses, expenses, numbers of employees, real estate, etc. Additionally, the minutes of the board of directors' meetings of the parent showed that the affairs of the subsidiary "were routinely the subject of the scrutiny and reports and that the directors participated in such major decisions as the hiring and replacement of [the subsidiary's] president." *de Walker*, 569 F.2d at 1171. Despite the close interrelationship between the parent and subsidiary, we found that "[t]he fact that [the parent] owned all of [the subsidiary's] stock, and the control incident to that ownership, do not justify ignoring the otherwise separate character of the two corporations ..., here the separation 'though perhaps merely formal, was real. It was not pure fiction.' " *de Walker*, 569 F.2d at 1173 (*quoting Cannon Manufacturing*, 267 U.S. at 337, 45 S.Ct. at 251). In so finding that the corporate separation was maintained we relied upon evidence showing that "the two corporations were separately incorporated, had separate boards of directors, kept separate accounting and tax records, and had separate facilities and operational personnel." *de Walker*, 569 F.2d at 1171.

■ In the present case, defendants presented uncontradicted evidence that CompAir Inc. maintained, in New Hampshire, its own general ledger, corporate minutes book and register of unissued

stock, its own bank accounts, and its own executive offices. CompAir Inc. filed its own federal and state income and unemployment taxes, social security contributions and excise taxes. This evidence indicates that the separate corporate identity of CompAir Inc. is entitled to be recognized.

Plaintiff Topp argues that CompAir Inc. had no separate corporate identity, and thus we should look beyond it to CompAir Ltd. and Siebe plc. He relies upon his assertions that CompAir Inc. had no independence in its financial decisions and that Stephens was ignoring the corporate entities when he fired Topp. To a degree this is doubtless so. But the main thrust of this evidence is simply that the parent corporation was exerting the control it had over its subsidiary. And as discussed *supra*, the fact that a parent corporation exercises the control which is necessarily incident to the full ownership of its subsidiary is insufficient, without more, to justify ignoring the separate corporate entities. This reasoning applies even more forcefully to this situation where plaintiff urges that several separate corporate identities be ignored (*i.e.*, CompAir Inc., CompAir Ltd., and Siebe plc).[5]

Also, plaintiff relies upon his assertion that CompAir Inc.'s sole function was as a financial conduit for CompAir Ltd. However, as long as the corporate formalities were observed, as they were in this case, the fact that the subsidiary was designed as a "conduit" for CompAir Ltd. is not a reason to ignore the corporate separation. The task here is to apply the nerve center test in order to establish the principal place of business of CompAir Inc. for diversity jurisdiction purposes, and we see no reason for inquiry into the motives behind the creation of this subsidiary.

The gist of all of plaintiff's arguments is that the federal court should be delving into how many important decisions and functions of a subsidiary are controlled by that subsidiary, and how many were controlled by the parent corporation. Again, keeping in mind that the issue here is CompAir Inc.'s principal place of business, and recognizing that CompAir Inc. has always held itself out as having accomplished its principal business activity (*i.e.*, providing financial services to its subsidiaries) through its own officers, employees and facilities, we can discern no value in having the federal district courts get mired down in the hopeless and unnecessary task of deciphering the internal power struggles going on between a parent corporation and its subsidiaries.

Having decided that the nerve center test should be applied to CompAir Inc. without reference to its parent corporations because the "corporation separation, though perhaps merely formal, was real," we now turn our attention to the application of that test to the facts of this case. Under the nerve center test the principal place of business is determined by considering the following factors:[6]

Location of corporate headquarters;

location of directors' meetings;

location from where corporate income tax return is filed;

location of corporate records;

location of principal bank accounts;

---

**5.** Plaintiff makes much of his assertions that as of September 1, 1985 CompAir Inc. had no employees, closed its doors and was in the process of being dismantled. Defendants countered with evidence showing that CompAir Inc. continued as a viable corporation; had retained its corporate management structure; was continuing to operate as a banking exchange for its subsidiaries; and had appointed a Mr. Young as president to replace Topp. Since the citizenship of CompAir Inc. is to be ascertained as of August 30, 1985, *see* footnote 1, *supra*, these conflicting claims as to CompAir Inc.'s status need not be sorted out. A subsequent corporate reor-

ganization, if indeed one even occurred, is not relevant to the task at hand.

**6.** Every factor on this list may not be applicable in every case. For example, if a corporation's board of directors meetings are not held consistently in one location, but rather are moved about, then that factor will not be helpful to resolution of the issue and should not be considered. *See Kelly v. United States Steel Corp.*, 284 F.2d 850, 852 (3d Cir.1960), wherein the court refused to rely solely upon the location of board meetings since, under the corporate law of many states, directors may choose their own place to meet at will.

location of corporate personnel who direct the daily operations of the corporation;

place where major policy decisions are made;

place which is designated in the charter or other corporate documents as the official headquarters of the company.

*See* 1 *Moore's Federal Practice* ¶ 0.77[3.–2] and cases cited therein.

Through testimony, affidavits and exhibits the following facts were clearly established before the district court in the present case:

CompAir Inc. maintained corporate records including its payroll, general ledger, corporate minutes book and register of unissued stock at its Kingston, New Hampshire office.

CompAir Inc. maintained several bank accounts including a benefits plan account, a money market account, an operating account, a payroll account, and an English pound account, which were all managed from the Kingston, New Hampshire office.

The Delaware franchise tax returns recite Kingston, New Hampshire as the principal place of business of CompAir Inc.

CompAir Inc.'s federal and state income, unemployment and excise tax forms all recite Kingston, New Hampshire as the address of the corporation.

CompAir Inc.'s social security contribution forms recite Kingston, New Hampshire as the address of the corporation.

CompAir Inc. supplied its president, Topp, with a company car which was registered in New Hampshire. The car's registration recites Kingston, New Hampshire as the address of the corporation.

CompAir Inc.'s vice president, comptroller and secretary all clearly maintained their offices and discharged their daily duties in Kingston, New Hampshire. The president also maintained an office at Kingston, New Hampshire, although Topp asserts that he also maintained offices in Maine and in England.

Topp never proved whether the time spent in those other offices related to his responsibilities as president of CompAir Inc., or whether it related to his responsibilities as a director of CompAir Ltd. Based on this uncontroverted evidence, we hold that the nerve center of CompAir Inc. is located in New Hampshire.

Plaintiff would have us rely on the nerve center test's final two factors: place where major policy decisions are made; place designated in the charter as the official headquarters. He argues that since the major policy decisions were made by the corporations located in England, that factor, in effect, is dispositive. However, as was decided *supra,* this case does not call for disregarding the separate corporate entities, and so the nerve center test will focus upon only CompAir Inc.'s acts. The United Kingdom corporations' acts in making major policy decisions are not applicable in this case. *Delalande, Inc. v. Fine,* 545 F.Supp. 268 (S.D.N.Y.1982), involved a similar situation wherein the court refused to ascribe the activities of a parent corporation located in France to its United States subsidiary. The court noted that the parent corporation, which directed and controlled the subsidiary, was located in Paris, and thus major policy decisions emanated from Paris. However, the court observed that the management and implementation of those decisions and policies were effectuated principally in New York. The court relied upon this fact and others to find that the subsidiary's principal place of business was New York. *Id.* at 272. In the present case, it is clear that the policies that may have been established in England were implemented in (or at least channeled through) Kingston, New Hampshire, which further reinforces the finding that CompAir Inc.'s principal place of business is in New Hampshire.

Plaintiff also relies upon his allegation that New York was always the *intended* location of the official headquarters of CompAir Inc., and that no corporate decision was ever made to designate New Hampshire as the principal place of business. There is no evidence of corporate

activities in New York. Indeed, plaintiff's amended complaint—which recites that CompAir Inc. is incorporated in Delaware and does business in New Hampshire, Maine, Michigan, Florida and California—does not even allege any activities in New York. The mere intention to locate in New York, without any other corporate activity in furtherance of that intention, has little relevance to the issue of CompAir Inc.'s principal place of business as of August 30, 1985 (the date this suit was filed, *see* footnote 1, *supra*).

■ The fact that New Hampshire was never officially designated as the corporation's principal place of business has obvious relevance, but we do not find it dispositive in the present situation. The federal courts must determine the corporation's principal place of business for diversity purposes even if the corporation has never made such a determination for itself. If there was some evidence which pointed to another state as the principal place of business of CompAir Inc., then the fact that New Hampshire was not designated officially as the principal place of business might have greater weight. Since, however, all the other factors point to New Hampshire as the principal place of business, the corporation's inaction on this point is not determinative.

■ Recognizing that it is the party invoking federal jurisdiction (here, the plaintiff) that carries the burden of proving facts sufficient to support a finding of diversity of citizenship, *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *de Walker*, 569 F.2d at 1172 n. 4, we find that Topp has not proven that CompAir Inc. has its principal place of business anywhere but New Hampshire. CompAir Inc.'s citizenship for purposes of federal diversity jurisdiction is Delaware (its state of incorporation) and New Hampshire (its principal place of business). Therefore, since Topp is a New Hampshire citizen, CompAir Inc. is not a diverse party.

In their brief on this interlocutory appeal to this court, defendants argue that if it were decided that CompAir Inc. is a New Hampshire citizen, then the entire action against all of the defendants should be dismissed because CompAir Inc. is an indispensable party. *See* Fed.R.Civ.P. 19(b) (when a party who should be joined cannot be joined, the court shall determine whether, "in equity and good conscience," the suit should continue with only the parties that are before the court). Since we accepted an interlocutory appeal on only the issue of CompAir Inc.'s principal place of business, we cannot and will not answer defendants' second claim. The issue of CompAir Inc.'s indispensability should be addressed to the district court.

*Vacated and remanded for further proceedings consistent with this opinion.*