774 F.Supp. 718 (1991)
In re AIR DISASTER NEAR COVE NECK, NEW YORK, ON JANUARY 25, 1990.
Margarita DE LONDONO, individually and as representative of the Estate of Omar Londono, Deceased, Plaintiff,
v.
AEROVIAS NACIONALES de COLOMBIA, S.A. a/k/a Avianca and the Boeing Company, Defendants.
MDL No. 843 (TCP). No. 90 CV 1811 (TCP).
United States District Court, E.D. New York.
September 16, 1991.
*719 George N. Tompkins, Condon & Forsyth, New York City, for defendants.
Marc S. Moller, Kreindler & Kreindler, New York City, for plaintiff.

MEMORANDUM AND ORDER
PLATT, Chief Judge.
Plaintiff was injured and her husband was killed when the plane on which they were travelling crashed en route from Colombia to New York in early 1990. She brought this action against Aerovias Nacionales de Colombia, S.A. ("Avianca, S.A."), the operator of the aircraft, and The Boeing Company, the manufacturer of the aircraft to recover for the injuries they sustained as a result of that crash. Avianca, S.A. now moves this Court for an Order dismissing plaintiff's action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, Avianca, S.A.'s motion is hereby granted.

I. Article 28 of The Warsaw Convention

The parties agree that the Warsaw Convention[1] governs the rights of the parties to this action. The issue presently before the Court concerns whether this Court possesses treaty jurisdiction pursuant to the terms of that Convention.
Article 28(1)[2] of the Convention provides that a suit for damages subject to its provisions must be brought in one of four locations: 1) the domicile of the carrier; 2) the principal place of business of the carrier; 3) the carrier's place of business through which the contract has been made; or 4) the place of destination. 49 Stat. 3020. This Article is jurisdictional in nature and the points of jurisdiction it specifies *720 are national in scope. Smith v. Canadian Pacific Airways, Ltd., 452 F.2d 798, 801 (2d Cir.1971). If, in any given action, the United States is not one of the fora specified by Article 28, the federal courts lack treaty jurisdiction under the Convention and therefore federal subject matter jurisdiction over the controversy. Gayda v. LOT Polish Airlines, 702 F.2d 424, 425 (2d Cir.1983); Smith, 452 F.2d at 802. Plaintiff here focuses solely upon the first locus of jurisdiction specified by Article 28, the domicile of the carrier.[3]
In this Circuit, an air carrier is generally considered to be domiciled in the country of its incorporation. Smith, 452 F.2d at 802; Eck v. United Arab Airlines, Inc., 360 F.2d 804, 809 (2d Cir.1966). Avianca, S.A. is a South American company, incorporated and headquartered in Colombia. While this fact would seem to end the jurisdictional analysis, plaintiff contends that Avianca, S.A. has acquired a second domicile in the United States. Borrowing an analysis from the law of federal diversity jurisdiction, she notes that Avianca, S.A. maintains a wholly-owned subsidiary, incorporated under the laws of New York, Avianca, Inc., over which it exercises significant control. So great is this control, plaintiff argues, that the two corporations may be considered alter egos of one another and the American domicile of the subsidiary imputed to the South American parent,[4] thus conferring jurisdiction on this Court under the terms of Article 28(1).
As far as this Court's research can determine, no prior Court has considered whether a jurisdictional alter ego analysis may properly be conducted under the terms of the Warsaw Convention.[5] Having considered the submissions and arguments of the parties, this Court now concludes that the Warsaw Convention does not allow the use of such an analysis.

II. Alter Ego Analysis in Diversity Jurisdiction

Although American law generally presumes that corporations are entities separate from their subsidiaries, Fletcher Cyc. Corp. § 43 (1989), federal courts sitting in diversity will ignore such corporate distinctions where the parent exercises sufficient control over the subsidiary. Panalpina Welttransport GMBH v. Geosource, Inc., 764 F.2d 352, 354 (5th Cir.1985); Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 556-58 (5th Cir.1985). Where such control is exercised, the two corporations will be deemed alter egos of one another and treated as a single consolidated entity. In matters relating to diversity jurisdiction, the effect of such treatment is to impute the domicile or the business activities of each company to the other. See Topp v. CompAir, Inc., 814 F.2d 830, 835-37 (1st Cir.1987); Panalpina, supra, 764 F.2d at 354; Freeman, supra, 754 F.2d at 556-58. Under no circumstances, however, does alter ego analysis permit a corporation to ignore the domicile of either of the two consolidated corporations; rather, in the *721 cases in which the subsidiary's domicile is imputed to the parent, the parent acquires an additional domicile for jurisdictional purposes. J.A. Olson Co. v. City of Winona, 818 F.2d 401, 413-14 (5th Cir.1987); Panalpina, supra, 764 F.2d at 354; Fritz v. American Home Shield Corp., 751 F.2d 1152, 1153-54 (11th Cir.1985). Thus, using an alter ego analysis, a single corporation may be found to possess several separate domiciles for jurisdictional purposes simultaneously.

III. Corporate Domicile Under the Warsaw Convention

In contrast to domestic American principles of jurisdiction, the terms of the Warsaw Convention indicate that the drafters of the treaty did not see the concept of corporate domicile, or domicile as it is rendered in the original French, as so expansive. Rather, they saw a corporation's domicile as unitary and did not contemplate that a corporation might be simultaneously domiciled in two separate countries.

A. Article 28
As is true with any treaty, Courts are bound to construe the language of the Warsaw Convention to effect the shared intentions of the contracting parties. Air France v. Saks, 470 U.S. 392, 399, 105 S.Ct. 1338, 1342, 84 L.Ed.2d 289 (1985). Of course, those intentions are most fully embodied in the text of the treaty itself. Courts must therefore follow that text unless it is ambiguous or produces results which are "necessarily absurd." Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 109 S.Ct. 1676, 1683-84, 104 L.Ed.2d 113 (1989). Furthermore, because the text was drafted in French by continental jurists, the French text and the French legal meaning of the terms it contains provide the clearest insight into the drafters's intentions. Air France, supra, 470 U.S. at 399, 105 S.Ct. at 1342.
The official text of Article 28(1), ratified by the Senate in 1934, provides:
L'action en responsibilite devra etre portee, au choix du demander, dans le territoire d'une des Haute Parties Contractantes soit devant le tribunal du domicile du transporteur, du siege principal de son exploitation ou du lieu ou il possede un etablissement par le soin duquel le contrat a ete conclu, soit devant le tribunal du lieu de destination.
Warsaw Convention, 49 Stat. at 3007.
The unofficial American translation of this Article, which was read to the Senate but not itself ratified, provides:
An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.
49 Stat. at 3020.

B. Du Domicile Du Transporteur
In the original French, Article 28(1) speaks of jurisdiction "du domicile du transporteur." Warsaw Convention, art. 28(1), 49 Stat. 3007. The American version of this provision translates this phrase as "the domicile of the carrier." Id., 49 Stat. 3020. It is a matter of hornbook American law that a corporation is deemed "domiciled" in the state in which it is incorporated. Restatement 2d, Conflict of Laws § 11(2) comment 1 (1971). Without analysis, courts in this Circuit have transferred this understanding of corporate domicile from the domestic to the Warsaw Convention context, finding corporations to be domiciled at their place of incorporation under the terms of the Warsaw Convention. Smith, supra, 452 F.2d at 802; Eck, 360 F.2d at 809.
The French term domicile, however, as it relates to corporations, does not refer to the place of incorporation. Wyler v. Korean Air Lines Co., 928 F.2d 1167, 1175 (D.C.Cir.1991); S. Speiser & C. Krause, Aviation Tort Law, § 11.41 n. 89 (1978). Instead, French law considers a corporation's domicile to be its siege social. G. Miller, Liability in International Air Transport, 301 (1977). Literally translated, *722 siege social means the "seat of the corporation," see Cassell's French Dictionary (1981), and under French law, it refers to the corporation's headquarters. See Zimonyl v. Varig Airlines (Empresa de Aerea Rio Grandese), 1978 U.S.Av.Rpts. 122, 125 (France, Court of First Instance of Paris, 1st Div., Sec. 2, Apr. 28, 1978); Wyler, supra, 928 F.2d at 1175; G. Miller, supra, at 301; N. Matte, Treatise on Air-Aeronautical Law 426-27 (1981).
As the term "headquarters" indicates, implicit in this concept of domicle or siege social, is the idea that an individual or a corporation may have no more than one. As one French Court explained, considering whether a South American Airline's maintenance of a place of business in France created a domicile there:
Paris cannot be the carrier's legal domicile, as a person, whether physical or legal can have only one domicile, which in this case is Rio de Janeiro, the headquarters of the Varig Company....
Zimonyl, supra, 1978 U.S.Av.Rpts. at 125 (France, Court of First Instance of Paris, 1st Div., Sec. 2, Apr. 28, 1978).[6] This view has been echoed by one noted commentator. Analyzing the distinctions between the common law concepts of domicile and the French notion of domicile, he concluded that they
did not present much of a risk of creating serious difficulties between judicial applications of Article 28. The reason is that beyond any difference in the technical definitions of the concepts of domicile, these definitions have in common an essential feature which is that, for a given purpose, there can be only one domicile.

G. Miller, supra, at 301 (citing Restatement 2d, Conflict of Laws § 11(2) (1971) and Dicey & Morris on the Conflict of Laws, Rule 5) (emphasis added).
The structure and language of Article 28(1) confirm that the drafters of the Convention intended to incorporate this French limitation into the treaty. First, it bears noting that the term domicile, as used in the Article, is singular rather than plural. More importantly, the structure of the provision itself suggests that the drafters intended the provision to specify four discrete points of jurisdiction, rather than four categories of locations which might each contain several appropriate points. Each of the three bases of jurisdiction other than domicile specify no more than a single country in any one instance. For instance, a carrier may only have one principal place of business under the convention. Smith, supra, 452 F.2d at 802 n. 13; Nudo v. Societe Anonyme Belge D'exploitation, 207 F.Supp. 191, 192 (E.D.Pa.1962). Similarly, there may be only one place of business through which the contract of carriage is made and there may only be one destination. See Gayda v. LOT Polish Airlines, 702 F.2d 424, 425 (2d Cir.1983); Butz v. British Airways, 421 F.Supp. 127, 130-31 (E.D.Pa.1976) (destination for purposes of Convention is ultimate destination), aff'd mem., 566 F.2d 1168 (3d Cir. 1977). Use of the unitary French concept of domicile would therefore have maintained the parallel structure of the provision. Moreover, when it is recalled that domicile-based jurisdiction was primarily intended to apply to individuals, this conclusion is all but irresistible.[7] As applied to *723 individuals, there may only be a single domicile for any given purpose at any given time. Zimonyl, 1978 U.S.Av.Rpts. at 125; G. Miller, supra, at 301. Indeed this is even true of common law notions of individual domicile. See Restatement 2d, Conflict of Laws § 11(2) & comment m (1971).
Given this general structure, this Court declines to conclude that the domicile provision, as applied to corporations, authorizes jurisdiction in two or more places simultaneously. Having clearly defined each of the other provisions of Article 28 to apply to only a single place in any one instance, and given the inherent limitation on the domicile provision as it applies to individuals, the drafters could not have intended that the same provision simultaneously create many points of jurisdiction as applied to corporations. That the drafters did not even explicitly consider the application of the provision to corporations during the Conference itself only makes the jurisdictional expansion proposed by plaintiffs all the more improbable. See Minutes, at 113-28, 169-70, 254.[8]
By conforming the American understanding of Article 28 with that of other parties to the Warsaw Convention, see, e.g., Zimonyl, supra, 1978 U.S.Av.Rpts. at 125, adoption of a unitary concept of corporate domicile also comports with the Treaty's general aim of promoting uniformity in the treatment of aviation among the world's legal communities. See Lowenfeld & Mendelsohn, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497, 498-99 (1966).
A unitary concept of corporate domicile also assures that each potential forum have a substantial connection with either the contract of carriage or with the carrier itself. See Minutes, supra, at 113; Lowenfeld & Mendelsohn, supra, 80 Harv.L.Rev. at 499. Under plaintiff's theory, on the other hand, a corporation may be subject to jurisdiction in a country with which it maintains no significant connection. For instance, under Article 28, jurisdiction does not exist where the carrier merely maintains *724 a place of business. See Wyler, supra, 928 F.2d at 1175. Jurisdiction arises only where the contract of carriage is concluded at that place of business or the place of business is the principal place of business of the carrier. In this case, the United States is not the carrier's principal place of business and plaintiff's contract of carriage was not concluded through any place of business of Avianca, S.A. in this country. Rather, as the facts presented by the plaintiff establish, the United States is merely a country in which Avianca, S.A. maintains a subsidiary sales agent. That agent, the evidence showed, operates in much the same way as unincorporated divisions of Avianca, S.A. in other countries. It is, in essence, an incorporated place of business of Avianca, S.A. Plaintiff offers no explanation of why local incorporation should transform an ordinary place of business into a locus of jurisdiction under the terms of the Warsaw Convention. Certainly, the text or the legislative history of the convention give no indication that the fact of incorporation ought to effect the suitability of jurisdiction. In fact, neither the text nor the Minutes of the Conference mention incorporation at all. Given this lack of textual authority, this Court must decline to expand the jurisdictional provision of the treaty based upon the fact that Avianca, S.A. maintains a subsidiary sales agent in the United States, whether or not that agent qualifies as an alter ego of its parent.
The country in which a carrier maintains an incorporated subsidiary also bears no necessary relationship to the contract of carriage or the expectations of the parties. For example, the contract here was not concluded outside this country and the United States was not the destination of the ticket.
While she acknowledges that the drafters of the convention intended to limit jurisdiction, plaintiff argues that her approach does no violence to this objective. In her view, Article 28(1) was designed to prevent a carrier from being subject to suit in remote countries with underdeveloped legal systems.[9] The alter ego analysis, she contends, can create jurisdiction only in those places where the parent has incorporated subsidiaries. By incorporating in a given country, a carrier essentially certifies that that country's legal system offers adequate protections and benefits and thus prevents it from being subject to suit in some primitive area of the world.
This argument fails because it presumes that the desire to avoid suit in countries with less-advanced legal systems was the sole organizing principle behind Article 28(1). This, however, was clearly not the case. While concerned about this possibility, the drafters still allowed suit to be brought in such countries provided that they were the destination of the flight at issue or the place where the ticket was sold. Indeed, these provisions indicate that the drafters were more concerned with conforming the bases of jurisdiction to the contract of carriage itself and the expectations of the parties created by it. They did not permit jurisdiction in any country with an advanced legal system. Rather, they required that the contract have been made in the forum, that the destination be located there, and so on. See Minutes, supra, at 113. Focusing upon the legal sophistication of a given forum, therefore, unjustifiably ignores the other objective underlying the restrictive approach to jurisdiction embodied in Article 28.

Conclusion
The nature of the alter ego analysis used in determining the existence of federal diversity jurisdiction renders it inappropriate for use in the context of the Warsaw Convention. Where it applies, the analysis determines that a single corporation is domiciled *725 in two separate places. The text and policies of the Warsaw Convention, however, indicate an air carrier may have no more than one domicile for purposes of the treaty. Thus, this Court concludes that the domestic alter ego analysis may not be applied under that Convention and that the carrier Avianca, S.A., is domiciled in Colombia where it is incorporated and headquartered, rather than in America where it maintains a subsidiary sales agent.
For the foregoing reasons, defendant's motion must be, and hereby is, granted.
SO ORDERED.
NOTES
[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, art. 1(1), 49 Stat. 3000, 3014, T.S. No. 876 (1934), reprinted, 49 U.S.C.App. § 1502 note [hereinafter the "Warsaw Convention"].
[2] The text, a translation and an analysis of this Article are set forth, infra, at p. 721 et seq.
[3] Plaintiff does not argue that any of the remaining three points of jurisdiction are located in the United States. Avianca is a Colombian corporation with its principal place of business in Colombia. Plaintiff and her husband purchased their round-trip tickets at Eldorado Airport in Bogota. Under the Warsaw Convention, the place of destination is the place of ultimate destination. Smith, 452 F.2d at 802; Butz v. British Airways, 421 F.Supp. 127, 130-31 (E.D.Pa.1976). In the case of a round trip ticket, the ultimate destination is the place of origin; the intermediate stop outside the country of origin is ignored. Thus, on these facts, Colombia is the place of destination. Campbell v. Air Jamaica, Ltd., 863 F.2d 1, 2 (2d Cir.1988); Petrire v. Spantax, S.A., 756 F.2d 263, 265 (2d Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985).
[4] While perhaps most commonly used to "pierce the corporate veil" for the purpose of imposing liability upon a parent for the acts or agreements of its subsidiary, a separate version of alter ego analysis is used to determine the citizenship of related companies for diversity purposes. Compare United States v. Jon-T Chemicals, Inc., 768 F.2d 686, 691-92 (5th Cir.1985) with Topp v. CompAir, Inc., 814 F.2d 830, 835-37 (1st Cir.1987).
[5] This Court is, of course, bound by the Second Circuit's holdings that a corporation is domiciled at the place of its incorporation. Smith, 452 F.2d at 802; Eck, 360 F.2d at 809. These cases, however, do not speak to the propriety of applying an alter ego analysis under the Warsaw Convention.
[6] The English translate domicile as "ordinarily resident." G. Miller, supra, at 300; Shawcross & Beaumont, Air Law ¶ 139 (1985). The English courts have not yet, however, elaborated the meaning of this term in the context of the Warsaw Convention. See Rothmans of Pall Mall (Overseas) Ltd. v. Saudi Arabian Airlines Corp., [1981] Q.B. 383, [1980] 3 All E.R. 359, C.A. As used in English domestic law, the concept generally applies only to individuals and not to corporations. Shawcross & Beaumont, supra, at ¶ 139. At least one commentator has suggested that, as applied to corporations under the Warsaw Convention, the concept is unitary. Id. (corporation ordinarily resident at "seat of board of directors").
[7] The drafting history of the Convention indicates that the "domicile" provision was included primarily to apply to cases in which the carrier was a private individual rather than a "transport enterprise."

The draft of the treaty initially presented to the Conference in Warsaw addressed jurisdiction in Article 26, which provided, in pertinent part:
The liability action shall be brought, at the plaintiff's option, in one of the Contracting States, either before the court of the principal place of business or of the place where the carrier has an establishment through which the contract was concluded, or before the court of the place of destination, or, in the case of the non-arrival of the aircraft, of the place of accident.
Minutes, Second International Conference on Private International Law, October 4-12, 1929, Warsaw 266 (R. Horner & D. Legrez trans. 1975) [hereinafter "Minutes"]. This formulation of the points of jurisdiction replaced a provision contained in an earlier draft which had authorized jurisdiction at the place of the "domicile of the defendant." In his Report introducing the draft to the Conference, Henri De Vos, the Reporter of the International Technical Committee of Aeronautical Legal Experts, indicated that the Committee had made this change because it found the new formulation "more practical for the operation of the transport enterprises." Minutes at 254.
The conference reincluded the domicile of the carrier as a locus of jurisdiction to provide for carriage by private individuals rather than "transport enterprises" or companies. Id. at 169, 285. The Czech delegation proposed this amendment, arguing that individuals could not have a principal place of business and therefore might not be subject to jurisdiction in all of the intended places. Id. To close this loophole, it proposed to add the domicile of the carrier as an additional place of business. Id. The draft language submitted by the Czech delegation makes this intention explicit: "In the case where an air transport enterprise is not involved, the liability action must also be brought before the court of the domicile of the carrier." Id. at 285. This alteration was sanctioned by the Reporter and adopted by the conference. The version adopted by the conference, however, omitted the clause explicitly limiting domicile jurisdiction to cases involving non-corporate air carriers. See Warsaw Convention at Article 28(1).
[8] Indeed, it is likely that the parties did not intend the domicile provision to apply to corporations at all. The concept was initially thought unsuitable for transport enterprises and therefore eliminated from the initial draft submitted to the conference. See note 6, supra; G. Miller, supra, at 300. Moreover, the Conference considered the provision only in relation to private individuals. See Minutes, at 169-70. Indeed, only the fact that the text of the Article does not limit domicile-based jurisdiction to individuals suggests that it was intended to apply to corporations. See note 6, supra. The force of this argument is undercut, however, by the fact that the text of the Article does not limit principal place of business jurisdiction to enterprises, even though the drafters clearly thought the concept unsuitable for individual carriers. Indeed, this perceived unsuitability was the sole expressed reason for the adoption of domicile jurisdiction. Minutes, at 169-70.
[9] As originally proposed to the Conference, the jurisdictional article provided for jurisdiction at the place of the accident. See note 6, supra. The conference eliminated this provision at the behest of the English delegation which offered two reasons for the change. See Minutes, at 113-16. First, the place of accident was unrelated to the expectations of the parties or to the contractual nature of the carriage relationship. Id. at 113. Second, the delegate noted place of accident jurisdiction might prejudice air carriers by subjecting them to suit in remote and judicially primitive countries. Id. at 114.