**Elizabeth Ruiz RIVERA, et al, Plaintiffs,**

v.

**PEPSICO PUERTO RICO, INC., Defendant.**

**Civil No. 95–2024 (HL).**

United States District Court,
D. Puerto Rico.

Aug. 20, 1996.

Ivan A. Ramos, Ramos & Ramos–Camara, San Juan, PR, for plaintiffs.

Amancio Arias–Guardiola, San Juan, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant PepsiCo Puerto Rico, Inc.'s ("PepsiCo") motion to dismiss this claim for lack of subject matter jurisdiction. PepsiCo is incorporated in Delaware. It operates in the food and restaurant business in Puerto Rico. Plaintiffs Elizabeth Ruiz Rivera and her minor children (collectively "Ruiz") filed this action on August 14, 1995, for damages pursuant to article 1802 of the Puerto Rico Civil Code. *See* P.R.Laws Ann. tit. 31, § 5141 (1990). Plaintiffs are residents of Puerto Rico. Ruiz alleges that while she was crossing a street in Condado, Puerto Rico, she was hit by a car driven by a Taco Bell employee and that as a result she suffered severe injuries. Taco Bell restaurants in Puerto Rico belong to a division of PepsiCo. Ruiz claims that the Court has jurisdiction to hear this matter on the grounds that there is complete diversity of the parties. *See* 28 U.S.C.A. § 1332 (West 1993).

In its motion to dismiss, PepsiCo claims that its principal place of business is Puerto Rico and that therefore there is no diversity between the parties. Ruiz opposed the motion, PepsiCo filed a reply to the opposition, and Ruiz also filed a reply. On August 6, 1996, the Court held an evidentiary hearing on the issue. Dafne Echevarría Colón ("Echevarría"), a former Taco Bell employee, testified on behalf of Ruiz. Meyer Menis ("Menis"), PepsiCo's in-house counsel, and José Tort ("Tort"), from PepsiCo's tax department, testified on behalf of PepsiCo.

Echevarría worked at Taco Bell restaurants in Puerto Rico from November 1993 to April 1995. She began as a crew member in the stores, and was later promoted to shift manager.[1] She testified at the hearing that as a shift manager she prepared payroll sheets, profit and loss reports, and other paper work. She further testified that the payroll sheets were prepared by entering information on a restaurant computer which was connected to an office in Texas; that the profit and loss reports were sent to Puerto Rico's Taco Bell restaurants from an office somewhere in the United States; that Taco Bell promotional materials were prepared in the United States; and that employee records were kept in Texas. In a sworn statement submitted in support of Ruiz' opposition to the motion to dismiss she also stated that she sent administrative documents and inventory information to an address in New Mexico and that all reports and administrative paper work that she prepared was "rendered to offices, facilities, persons or systems that were not in Puerto Rico."[2] In support of Echevarría's statement, Ruiz submitted two Taco Bell earning statements for Echevarría that provide a San Antonio address for Taco Bell of Puerto Rico. Additionally, Ruiz submitted a letter from Taco Bell's insurance claims adjuster to Ruiz' attorney regarding her claim for the accident which gave rise to the present action. The adjuster is based in Florida. Echevarría also testified that she was paid by a check drawn on a Puerto Rico bank, that personnel training was done in Puerto Rico, and that Taco Bell's region manager had his office in Cataño, Puerto Rico.

In support of its motion to dismiss, PepsiCo submitted sworn statements of Meyer Menis, the company's in-house counsel.[3] Menis stated in his sworn statements that in 1993 Taco Bell Puerto Rico, Inc. merged with four other companies to form PepsiCo; that PepsiCo conducts substantially all its operations in Puerto Rico; that all of PepsiCo's physical facilities are located in Puerto Rico; that PepsiCo does not own any property outside of Puerto Rico; that PepsiCo has approximately 4,300 employees, "substantially all of whom work and live in Puerto Rico;" that PepsiCo files taxes, returns, and payroll taxes in Puerto Rico; that PepsiCo's day-to-day operations are performed in Puerto Rico; that PepsiCo's three corporate directors and the general managers of the corporation's

---

**1.** *See* docket no. 15, sworn statement of Dafne Echevarría Colón.

**2.** *See* docket no. 15.

**3.** *See* docket nos. 7 & 12.

various divisions all live in Puerto Rico; and that PepsiCo has its bank accounts in Puerto Rico. At the hearing Menis testified that some parts of payroll were processed in the United States; that PepsiCo pays into the Puerto Rico workers' compensation fund; and that the only local or state taxes that PepsiCo pays are Puerto Rico taxes. Menis also testified that the president and vice president of the corporation live in New York and have their offices at the site of Pepsi's world headquarters there.

José Tort, of PepsiCo's tax department, also testified at the hearing. Tort stated that PepsiCo does not have a central headquarters because it is made up of several divisions,[4] but the manager of each division works in Puerto Rico. He further testified that these managers make policy decisions; among the policy decisions made by these managers are issues regarding restaurant expansion, worker safety, and taxes; PepsiCo's real estate, marketing and tax departments are located in Puerto Rico; PepsiCo has checking accounts with Puerto Rico banks; PepsiCo's address for purposes of government registration and taxation is in Puerto Rico; and PepsiCo managers in Puerto Rico approve the corporation's financial statements. Tort also stated that PRI was one of the divisions of PepsiCo; PRI's offices are in Puerto Rico; PRI operates the Taco Bell, Pizza Hut, and Kentucky Fried Chicken restaurants in Puerto Rico; and it has approximately 4,000 employees. With regard to Ruiz' evidence that payroll and administrative matters were prepared outside of Puerto Rico, Tort testified that in the past the different divisions may have used outside services for payroll check preparation and processing, but that all these services have since been consolidated in Puerto Rico.

■ PepsiCo argues that its principal place of business is in Puerto Rico and that therefore the Court lacks diversity jurisdiction to hear this case. Once diversity jurisdiction has been challenged, the party invoking the court's subject matter jurisdiction has

the burden of proving by a preponderance of the evidence facts that support the allegation of jurisdiction. *Bank One, Texas, N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir.1992). A corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C.A. § 1332(c)(1). If the party alleging jurisdiction adduces inadequate evidence to establish the corporation's principal place of business, there is inadequate support for invoking the court's jurisdiction. *Media Duplication Services, Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1236 (1st Cir.1991).

In the determination of a corporation's principal place of business, the court must focus only on the business activities of the corporation whose principal place of business is at issue. *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 62–63 (1st Cir. 1993). In the First Circuit, there are three distinct tests for a court to use in determining a corporation's principal place of business: (1) the "nerve center" test, (2) the "center of corporate activity" test, and (3) the "locus of the operations of the corporation" test. *Id.* at 60–61. These three tests often merge and overlap. *Topp v. CompAir, Inc.,* 814 F.2d 830, 834 (1st Cir.1987). In the present case, the Court finds that the application of each test leads to the conclusion that PepsiCo's principal place of business is in Puerto Rico.

■ The first of these tests—the nerve center test—searches for the location from which the corporation's officers, coordinate, direct and control all activities in furtherance of the corporation's objectives. *Lugo–Vina v. Pueblo Int'l, Inc.,* 574 F.2d 41, 43 (1st Cir.1978). Under this examination the court should consider such factors as the place where most of the corporation's high-ranking officers have their offices, where policy decisions are made, where administrative departments are located, and where the corporation's last income tax return has been filed. *Topp,* 814 F.2d at 834 (quoting 1 *Moore's*

---

4. At the hearing, PepsiCo presented a chart demonstrating the organization of the various divisions within PepsiCo. *See* exhibit A of hearing of August 6, 1996. PRI, the restaurant division, operates Taco Bell, Pizza Hut, and Kentucky

Fried Chicken restaurants in Puerto Rico. Other divisions include the manufacture of Frito–Lay products and the manufacture of concentrate beverages.

*Federal Practice* ¶ 0.77[3.–2], at 717.67 (2d ed. 1986)). The fact that a parent corporation is located in a particular state does not demonstrate that the subsidiary is also located there. *Id.* at 835.

In the hearing held in the case before the Court, Ruiz relied on the fact that PepsiCo's president and vice president had their offices in New York to support her contention that PepsiCo did not have its principal place of business in Puerto Rico. Ruiz, however, failed to meet her burden to present evidence as to the extent of the president's and vice president's involvement in the coordination, direction, and control of the corporation's activities. Moreover, PepsiCo presented uncontested evidence that its division managers all work in Puerto Rico, that these Puerto Rico-based managers make policy decisions, that PepsiCo filed a Puerto Rico tax return, and that its tax department, real estate department, and marketing department are in Puerto Rico. Based on the weight of Pepsi-Co's evidence and the paucity of Ruiz' evidence on this issue, the Court finds that under the nerve center test, PepsiCo's principal place of business is Puerto Rico.

The second test—the center of corporate activity test—focuses on where the corporation's day-to-day management takes place. *de Walker v. Pueblo Int'l, Inc.,* 569 F.2d 1169, 1172 (1st Cir.1978); *Morales–Tirado v. Hilton Int'l Co.,* 783 F.Supp. 722, 723 (D.P.R. 1992). The third test—the locus of the corporation's operations test—is based on the location of the bulk of the corporation's actual physical operations. *Topp,* 814 F.2d at 834. In both of these tests, Ruiz' evidence is lacking to support a finding of diversity jurisdiction. Echevarría, Ruiz' own witness, testified that she was paid by a check drawn on a Puerto Rico bank, that personnel training was done in Puerto Rico, and that Taco Bell's region manager had his office in Cataño, Puerto Rico. PepsiCo's evidence demonstrated that "substantially all" of PepsiCo's approximately 4,300 employees work in Puerto Rico; that PepsiCo's day-to-day operations are performed in Puerto Rico; that PepsiCo's bank accounts are in Puerto Rico; that all of PepsiCo's physical facilities are located in Puerto Rico; that PepsiCo does not own any property outside of Puerto Rico; that PepsiCo's division managers in Puerto Rico make policy decisions, on issues including restaurant expansion, worker safety, and taxes; and that PepsiCo's real estate, marketing and tax departments are located in Puerto Rico. All of this evidence indicates that PepsiCo's day-to-day management and the bulk of its actual physical operations are in Puerto Rico.

As mentioned above, Ruiz argued at the hearing that the New York offices of Pepsi-Co's president and vice president were evidence that the corporation's principal place of business was outside of Puerto Rico. However, Ruiz failed to adduce any evidence as to what input these two officers had over PepsiCo's day-to-day management. Ruiz also relied on Echevarría's testimony that while she worked at Taco Bell she would send payroll and other administrative data to locations outside of Puerto Rico. The Court finds this evidence to be unpersuasive. First, PepsiCo's two witnesses are both more intimately acquainted than Echevarría with the higher levels of PepsiCo's management. They both testified that certain services, such as payroll, were handled by companies located outside of Puerto Rico. The fact that some divisions of PepsiCo contracted out certain administrative services to companies outside of Puerto Rico does not establish that PepsiCo's principal place of business was identical to the site of these other companies. Additionally, Echevarría worked at Taco Bell only until April 1995. Ruiz filed her complaint in August 1995. The facts at the time an action is filed govern the court's determination as to diversity. *HDG,* 928 F.2d at 1236. All of Echevarría's testimony and evidence regarding Taco Bell's administration and payroll covered a time prior to Ruiz' filing of the complaint in August 1996. Ruiz has failed to adduce any evidence covering the time that she filed the complaint.

The Court has analyzed the issue of Pepsi-Co's principal place of business under all of the three above-discussed tests. Under all of these tests, Ruiz has failed to meet her burden of proving by a preponderance of the evidence the facts to support her allegation that PepsiCo's principal place of business is

outside of Puerto Rico. The evidence presented by PepsiCo in its motions and at the hearing persuasively demonstrate that its principal place of business is Puerto Rico. Accordingly, the Court finds that Ruiz has failed to demonstrate that there is diversity between the parties. Thus, this Court lacks jurisdiction to hear Ruiz' claim.

WHEREFORE, the Court hereby **grants** PepsiCo's motion to dismiss (docket no. 7) for lack of subject matter jurisdiction. Judgment shall be entered accordingly dismissing this action without prejudice.

**IT IS SO ORDERED.**