# United States Court of Appeals
## For the First Circuit

No. 04-1688

TOMAS DÍAZ-RODRÍGUEZ; ENERGY TECH CORP.,

Plaintiffs, Appellants,

v.

PEP BOYS CORP.; MANNY MOE & JACK CORP., PUERTO RICO, INC. d/b/a/
PEP BOYS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Selya and Lipez, Circuit Judges,
and DiClerico, Jr., District Judge.[*]

Nelson Robles Díaz for appellants.
Francisco A. Besosa, with whom Lourdes I. Morera-Ladón, Adsuar
Muñiz Goyco & Besosa, P.S.C., Michael E. Baughman, and Dechert,
LLP, were on brief, for appellees.

June 3, 2005

[*]Of the District of New Hampshire, sitting by designation.

**LIPEZ, Circuit Judge**.  This appeal began as a challenge to the merits of a grant of summary judgment in the underlying breach of contract case.  At oral argument, we shifted the focus of the appeal by inquiring sua sponte into the possibility that the parties were not completely diverse and that the district court therefore lacked subject matter jurisdiction in this case.  We ordered supplemental briefing regarding the citizenship of appellee Manny, Moe & Jack Corp., Puerto Rico, Inc. ("Pep Boys PR"), and then, while retaining appellate jurisdiction, remanded for an evidentiary hearing on the same subject.  With the benefit of extensive fact-finding by the district court, we now conclude that Pep Boys PR has its principal place of business in, and is thus a citizen of, Puerto Rico.  Because the appellants are also citizens of Puerto Rico, the parties are not diverse.  We therefore vacate the judgment and, given the absence of federal subject matter jurisdiction, remand to the district court with instructions to remand the case to the court from which it was improvidently removed.  We also clarify our law regarding the principal place of business determination.

**I.**

On March 15, 2002, appellants Energy Tech Corp. ("ETC") and Tomas Díaz Rodríguez sued automotive supply retailer Pep Boys PR and its parent company, Pep Boys Corp. ("Pep Boys"), in the Court of First Instance of Puerto Rico, Bayamón Superior Division.

-2-

The complaint alleged (1) that Pep Boys PR was liable for breaching a contract under which it was to serve as the exclusive Puerto Rico seller of an ETC product called Super FuelMax and (2) that Pep Boys had tortiously interfered in the relationship between ETC and Pep Boys PR by inducing Pep Boys PR to break the contract.

The appellees removed the case to federal court on April 9, 2002.  The notice of removal asserted that

> [d]efendants . . . were incorporated in states other than Puerto Rico (Pennsylvania and Delaware), and have their principal places of business in Philadelphia, Pennsylvania.  This action, therefore, may be removed from the courts of the Commonwealth of Puerto Rico to this District Court pursuant to 28 U.S.C. § 1441(b).

The appellants did not challenge the existence of diversity jurisdiction at this juncture, and the appellees answered the complaint on May 8, 2002.

On February 28, 2003, the appellees filed a motion for summary judgment; on March 11, 2003, the appellants filed a motion for partial summary judgment.  Based on the recommendation of a magistrate judge, the district court granted the appellees' motion for summary judgment, denied the appellants' motion for partial summary judgment, and filed an order dismissing the suit with prejudice.  See Díaz-Rodríguez v. Pep Boys Corp., No. 02-10536 (D.P.R. Mar. 29, 2004).  The appellants filed a notice of appeal on April 28, 2004.

The briefs filed by the parties before oral argument were directed entirely to the merits of the district court's grant of

summary judgment. Those arguments are predicated, however, on the existence of subject matter jurisdiction. We cannot consider the merits of the district court's ruling on appeal if it did not have jurisdiction to adjudicate the issues before it in the first instance. See, e.g., Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003) ("Because federal courts are powerless to act in the absence of subject matter jurisdiction, we have an unflagging obligation to notice jurisdictional defects and to pursue them on our own initiative.").

The only conceivable basis for federal jurisdiction in this case is diversity of citizenship. 28 U.S.C. § 1332(a). "Diversity jurisdiction exists only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant." Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005). For diversity purposes, a corporation is a citizen of both the state where it is incorporated and "the State where it has its principal place of business." Id. § 1332(c)(1). As used in the diversity statute, the term "state" includes Puerto Rico. Id. § 1332(e).

Neither party questioned the existence of complete diversity during the district court proceedings. Nevertheless, concerned about the possibility that ETC and Pep Boys PR were non-diverse, we raised the jurisdictional issue sua sponte at oral

arguments and ordered supplemental briefing.[1]  Cf. In re Perry, 391 F.3d 282, 284-85 (1st Cir. 2004) (requesting, sua sponte, supplemental briefing on a jurisdictional issue).  For the first time in their supplemental brief, the appellants took the position that Pep Boys PR has its principal place of business in Puerto Rico, where all of its retail stores are located, and therefore that it is not diverse from the appellants, who are citizens of Puerto Rico.  The appellees disagreed, maintaining that Pep Boys PR's principal place of business is in Philadelphia, where almost all of its officers are located and its corporate support functions are based.[2]

Viewing the supplemental briefs as inconclusive, we retained appellate jurisdiction while remanding to the district court to hold an evidentiary hearing as to the locus of Pep Boys PR's principal place of business.  The district court complied, holding a hearing and making extensive findings of fact.  We now

---

[1]Pep Boys PR is the only party whose citizenship is in question; it is undisputed that the parties are otherwise diverse.

[2]The district court supportably found that all but one of Pep Boys PR's  directors and officers are located in Philadelphia and that many of the decisions regarding Pep Boys PR's operations are made in Philadelphia.  Pep Boys PR also had one officer located in Puerto Rico.  When this suit was removed to federal court in 2002, the officer in Puerto Rico was the Divisional Vice President, who supervised the day-to-day operations of Pep Boys PR's stores.

determine Pep Boys PR's principal place of business <u>de</u> <u>novo</u> based on the district court's factual findings.[3]

**II.**

We have identified three tests for determining a corporation's principal place of business:

> One is the "nerve center" test which searches for the location from where the activities of the corporation are controlled and directed. The two other tests are the "center of corporate activity" test, i.e., where the corporation's day-to-day management takes place; and the "locus of the operations of the corporation" test, i.e., where the bulk of the corporation's actual physical operations are located.

<u>Topp</u> v. <u>CompAir Inc.</u>, 814 F.2d 830, 834 (1st Cir. 1987) (internal citations omitted); <u>see</u> <u>also</u> <u>de Walker</u> v. <u>Pueblo Int'l, Inc.</u>, 569 F.2d 1169, 1171-72 (1st Cir. 1978).

While the tests that we have identified are "not necessarily inconsistent," <u>Topp</u>, 814 F.2d at 834, their differing emphases mean that, in some cases, they will point to different locations as the principal place of business. For example, Pep Boys PR is essentially controlled from Philadelphia but all of its retail stores are located in Puerto Rico. The nerve center test might point to Philadelphia as Pep Boys PR's principal place of

---

[3]On reflection, the better practice might have been to ask the district court to make the legal determination in the first instance. <u>See</u> <u>Taber Partners, I</u> v. <u>Merit Builders, Inc.</u>, 987 F.2d 57, 60 (1st Cir. 1993) ("A district court's determination of citizenship for purposes of diversity jurisdiction is a mixed question of law and fact.").

-6-

business, see id. at 837-38 (listing eight factors to consider in applying the nerve center test) while the locus of operations test might point to Puerto Rico, where all of the corporation's physical assets are located.  This result would be inconsistent with the rule that a corporation can have only one principal place of business.  See Capitol Indem. Corp. v. Russellville Steel Co., 367 F.3d 831, 835 (8th Cir. 2004).  We must thus determine which test controls in this case.

First Circuit precedent offers only limited guidance on how to determine a corporation's principal place of business when the three tests point to different locations.  Our cases indicate that the nerve center test governs in the context of a corporation with "complex and farflung activities" or a corporation without physical operations (e.g., a holding company).  Topp, 814 F.2d at 834.  This rule implies that if a corporation has physical operations and is not "farflung," one of the other tests -- the center of corporate activity or the locus of operations -- must govern.  See PayPhone LLC v. Brooks Fiber Communications of R.I., 126 F. Supp. 2d 175, 182-83 (D.R.I. 2001).

Pep Boys PR has physical operations and is not a complex or far flung corporation.  Therefore, the nerve center test does not control and we must look instead to the center of corporate activity test or the locus of operations test.  We have never explained, however, a basis for choosing between these two tests.

See <u>Savis, Inc.</u> v. <u>Warner Lambert, Inc.</u>, 967 F. Supp. 632, 637 (D.P.R. 1997) (noting a lack of case law on point).

Given our recognition of the nerve center and locus of operations tests, the center of corporate activity test is largely redundant. In some cases, it involves "an analysis and result similar to the one employed . . . under the rubric of the nerve center test." <u>Topp</u>, 814 F.2d at 834 n.3; <u>see</u> <u>also</u> <u>Taber Partners</u>, 987 F.2d at 63 & n.8. In other cases, it is largely indistinguishable from the locus of operations test. <u>See</u> <u>Savis</u>, 967 F. Supp. at 637 (noting that no other circuit has recognized the center of corporate activity and locus of operations tests as distinct). There does not appear to be any context in which the center of corporate activity test supplies an analysis different from that available under one of the other two tests.

Our case law confirms this redundancy. We have explicitly alluded to the center of corporate activity test in only four cases. In two of those cases, we concluded that all three tests would point to the same location as the principal place of business. <u>See</u> <u>Rodriguez</u> v. <u>S K & F Co.</u>, 833 F.2d 8, 9 (1st Cir. 1987) (per curiam); <u>de Walker</u>, 569 F.2d at 1172. In the other two cases, which involved corporations without physical operations and which, therefore, did not lend themselves to application of the locus of operations test, we concluded that the nerve center and center of corporate activity test would point to the same principal

place of business.  See Taber Partners, 987 F.2d at 63 & n.8; Topp, 814 F.2d at 834 n.3.

In summary, the case law reveals that our references to the center of corporate activity test have always been dicta -- that is, comments "made while delivering a judicial opinion, but . . . unnecessary to the decision in the case."  Black's Law Dictionary (8th ed. 2004) (defining obiter dictum).  Indeed, even the case which initially referred to the center of corporate activity test did not treat that test as determinative.  See de Walker, 569 F.2d at 1173 (holding that the district court's diversity determination was erroneous because "plaintiff did not establish that [the defendant corporation's] 'nerve center' or any substantial part of its operations was outside Puerto Rico" (emphasis added)).  Moreover, it appears that our dicta in this area has been more confusing than helpful.  See Caribbean Mushroom Co. v. Gov't Dev. Bank, 980 F. Supp. 620, 626 (D.P.R. 1997) ("Despite setting up a variety of distinct tests . . . the jurisprudence from this circuit provides little guidance as to when each test should apply, leading many courts facing the issue to apply each and every available test in order to avoid having to choose which test to apply.").

Unlike a holding, which binds newly constituted panels in a multi-panel circuit, see Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004), dicta "is not binding on future panels."

Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003); see also Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992) ("Dictum constitutes neither the law of the case nor the stuff of binding precedent."). In other words, although a newly constituted panel ordinarily may not disregard the decision of a previous panel, principles of stare decisis do not preclude us from disclaiming dicta in a prior decision. See, e.g., United States v. Perez-Ruiz, 353 F.3d 1, 10 (1st Cir. 2003). We do so here with regard to the center of corporate activity test. In the future, district courts required to determine a corporation's principal place of business should not apply the center of corporate activity test. Instead, they should use either the nerve center test or the locus of operations test, depending on the characteristics of the corporation.

It is well settled in this circuit that the nerve center test applies only to farflung corporations or corporations without physical operations. See Topp, 814 F.2d at 834. We now add that the principal place of business of a corporation that has the bulk of its physical operations in one state is to be determined under the locus of operations test, even if the corporation's executive offices are in another state. This holding is consistent with the approach adopted by district courts in the First Circuit in recent

-10-

years.[4]   See, e.g., Payphone LLC, 126 F. Supp. 2d at 183 (determining a telephone company's principal place of business according to the location of its facilities and equipment, even though corporate activity was centered elsewhere); Savis, 967 F. Supp. at 638 (concluding that "[w]here a corporation is engaged in a single enterprise, substantially all of whose operations occur in one state, even though policy and administrative decisions are made elsewhere, the state of operations is the corporation's principal place of business" (quoting Santana Salgado v. DuPont Pharmaceutical, Inc., 664 F.Supp. 644, 645 (D.P.R. 1987)).   More importantly, it is consistent with the policies underlying 28 U.S.C. § 1332, the statute creating diversity jurisdiction.   A primary purpose of diversity jurisdiction is to shield foreign parties from the prejudice they might face as outsiders in state court.   "Thus, the principal place of business should be the place

_____

[4]The framework we set forth here also has much in common with the sensible "total activity" test adopted by a number of our sister circuits.  See Savis, 967 F. Supp. at 637 n.8 (collecting cases).  Under the total activity test,

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant; but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance.

J.A. Olson Co. v. City of Winona, 818 F.2d 401, 411 (5th Cir. 1987) (internal citations omitted).

-11-

where the corporation conducts the most activity that is visible and impacts the public, so that it is least likely to suffer from prejudice against outsiders." Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990).

We have described the locus of operations test as "search[ing] for the location of the corporation's actual physical operations." Taber Partners, 987 F.2d at 61. The district court's supportable findings of fact in this case clearly indicate that Pep Boys PR's actual physical operations are located in Puerto Rico. Pep Boys PR is a retailer dealing in automotive supplies. All of its physical assets, including its 27 stores and its inventory, are located in Puerto Rico, as are its 1,214 employees. Pep Boys PR does not operate, own, or lease stores in any other jurisdiction. The corporation owns the equipment used in its Puerto Rico stores and owns or leases approximately fifty trucks to provide service to its commercial clients there. In 2002, the year this suit was removed to federal court, Pep Boys PR had a total gross income of $56 million, all generated by sales in Puerto Rico. In short, Puerto Rico is clearly the locus of Pep Boys PR's operations.

It is true that many of Pep Boys PR's administrative and executive functions are based outside of Puerto Rico. The district court found that all but one of the members of Pep Boys PR's Board of Directors work in Philadelphia. Major policy decisions are made in Philadelphia, and the merchandise, advertising, distribution,

finance, and human resources departments are located there.  These are the types of factors that would be relevant under the nerve center test.  See Topp, 814 F.2d at 837-38.  As we have discussed, however, the nerve center test does not dictate the principal place of business of a corporation that, like Pep Boys PR, has all of its extensive physical operations in one state and its administrative and executive functions in another state.  Rather, consistent with the policies underlying 28 U.S.C. § 1332, the locus of operations test is determinative in this context.

The conclusion that Pep Boys PR's principal place of business is in Puerto Rico has substantial implications in this case.  Pep Boys PR is a citizen of Puerto Rico.  See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.").  It is undisputed that the appellants were and are also citizens of Puerto Rico.  Thus, the parties are not diverse.  There being no other basis for federal jurisdiction, we are compelled to vacate the district court's grant of summary judgment on the ground that it lacked subject matter jurisdiction, see Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 142 (1st Cir. 2004) (noting that "diversity jurisdiction is . . . not a matter subject to the exercise of judicial discretion"), and to remand to the

district court with instructions to remand the case to the court from which it was improvidently removed.[5]

So ordered.

---

[5]There is something faintly inequitable about a party letting a case go to judgment without questioning the court's jurisdiction, losing, and then profiting from a jurisdictional defect noted sua sponte by the appellate court. Still, it was the appellees who removed the case. And, moreover, federal courts are courts of limited jurisdiction. Consequently, such courts must "monitor their jurisdictional boundaries vigilantly." Id. at 139. It follows that parties cannot confer subject matter jurisdiction on a federal court by acquiescence or oversight. See United States v. Horn, 29 F.3d 754, 768 (1st Cir. 1994).