**Alekssandra SOTO–VELEZ,
et al., Plaintiffs**

v.

**BCBG MAX AZRIA, INC.,
et al., Defendants.**

**Civil No. 08–1726 (SEC).**

United States District Court,
D. Puerto Rico.

Dec. 4, 2008.

Juan A. Moldes–Rodriguez, Juan Moldes Law Office, San Juan, PR, for Plaintiffs.

Juan J. Casillas–Ayala, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Pending before the Court is Alekssandra Soto–Velez, Jose G. Jimenez, and the Conjugal Partnership Jimenez–Soto's (hereinafter "Plaintiffs") petition for remand. *See* Docket # 7. BCBG Max Azria Group, Inc. (hereinafter "Defendant"), the mother company of BCBG Max Azria, Inc., removed from state court by invoking diversity jurisdiction (28 U.S.C. § 1332). *See* Docket # 1. Defendant asserts that Plaintiffs are citizens of Puerto Rico and that Defendant is a corporation organized under the laws of California with its principal place of business in Vernon, California. Neither Plaintiffs nor Defendant contest that the amount in controversy per the facts alleged in the complaint is greater than $75,000. Plaintiffs object to the notice of removal and requested remand (Docket # 7) under the theory that Defendant's commercial activity in Puerto Rico is commensurate to that of a resident. These activities include obtaining authorization from the Commonwealth of Puerto Rico to do business in this jurisdiction, operating three retail locations in the Commonwealth, purchasing public liability insurance for its Commonwealth outlets, and retaining the services of a local accounting firm for compliance with local tax law.

Accordingly, Plaintiffs filed a memorandum of law requesting remand (Docket # 7), and Defendant filed an opposition (Docket # 10). After examining the parties' filings, the Court is satisfied that the requirements of 28 U.S.C. §§ 1332, 1441 and 1446 are met in the present case, thereby making Defendant's petition for removal proper. Consequently, Plaintiffs' request for remand is **DENIED**.

### Applicable Law and Analysis

■ Section 1441 states as follows:

... any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441(a). When a removal is premised on diversity jurisdiction, only defendants may remove a case from state to federal court and only when none of the named defendants is a citizen of the state in which the action was originally brought. Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 3d § 3723; *see also* 28 U.S.C. § 1441(b). Furthermore, the removing party must establish that no plaintiff is a citizen of the same

state as any of the defendants and that the amount in controversy exceeds $75,000, excluding interests and costs. *See* 28 U.S.C. § 1332. Relevant case law has stated that, "[t]he party invoking the jurisdiction of the federal court carries the burden of proving its existence." *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir.1995) (citations omitted); *see also Topp v. CompAir, Inc.*, 814 F.2d 830, 839 (1st Cir.1987).

The amount in controversy requirement is ordinarily determined from the plaintiff's complaint. *Coventry Sewage Associates*, 71 F.3d at 4. Additionally, a court may determine the amount of controversy based on the circumstances existing at the time the complaint was filed. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001); *Coventry Sewage*, 71 F.3d at 4. If the face of the complaint reveals, to a legal certainty, that the controversy cannot involve the requisite amount, jurisdiction will not attach. *Id.* at 6 (*citing St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 291, 58 S.Ct. 586, 82 L.Ed. 845 (1938)); *see also*, E. Chemerinsky, *Federal Jurisdiction*, § 5.3 at p. 317 (5th ed. 2007).

In terms of a removal under Section 1441(b), a defendant requesting removal may not be a citizen of the state where the action was originally brought. Under 28 U.S.C. § 1332, the court loses its subject matter jurisdiction if any plaintiff is a citizen of the same state as any defendant. This is termed the requirement for complete diversity, and dates to the landmark 1806 decision of *Strawbridge v. Curtiss* [1]. E. Chemerinsky, *supra* § 5.3 at 302–304; *see also Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir.2005).

■ Determining the citizenship of a party, "for purposes of diversity jurisdiction is a mixed question of law and fact." *Taber Partners v. Merit Builders*, 987 F.2d 57, 60 (1st Cir.1993). In terms of the law surrounding the citizenship of corporations 28 U.S.C. § 1332(c) states as follows:

For the purposes of this section and section 1441 of this title—

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and

(2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

Therefore, for the purposes of diversity a corporation is a citizen both of the state where it is incorporated, and where it has its principal place of business. Even more importantly, the use of the word "state" in terms of the diversity statute includes the Commonwealth of Puerto Rico. *Id.* at § 1332(e).

The First Circuit traditionally has used three tests to discern a corporation's principal place of business:

One is the "nerve center" test which searches for the location from where the activities of the corporation are controlled and directed. The two other tests are the "center of corporate activity" test, i.e., where the corporation's

---

1. 3 Cranch 267, 2 L.Ed. 435 (1806).

day-to-day management takes place; and the "locus of the operations of the corporation" test, i.e., where the bulk of the corporation's actual physical operations are located. *Diaz–Rodriguez v. Pep Boys Corp.*, 410 F.3d 56, 59 (1st Cir.2005); *see also Topp*, 814 F.2d at 834; *Walker v. Pueblo Int'l, Inc.*, 569 F.2d 1169, 1171–72 (1st Cir.1978). However, recently the First Circuit found the center of corporate activity test to be redundant in light the nerve center test and the locus of operations test. *Diaz–Rodriguez*, 410 F.3d at 61. As such, First Circuit district courts should now only use the nerve center test or the locus of operations test. *Id.*

▪ These tests may lead to different locations being identified as the principal place of business of a defendant corporation. As such, the Court must determine which test controls, because ". . . a corporation can have only one principal place of business." *Id.* at 59. The nerve center test ". . . applies only to far-flung corporations or corporations without physical operations," while the locus of operations test should be used when a corporation ". . . has the bulk of its physical operations in one state," even if policy and administrative decisions are made elsewhere. *Id.* at 61.

Against this backdrop, the Court examines the allegations in the instant case.

**Discussion**

With regards to the jurisdictional amount set forth in Section 1332, Plaintiffs' Complaint filed in Puerto Rico state court (Docket # 6, Exhibit 1–A) requests over $500,000 dollars in relief under Law 80, 29 L.P.R.A. § 185, et seq., Law 69, 29 L.P.R.A. § 467, et seq., and other local employment and discrimination statutes. The motion for remand (Docket # 7) only mentions Law 80, which by Plaintiffs' own admission warrants a maximum award of $32,490.24. *See* Docket # 6, Exhibit 1–A.

Said amount would preclude a diversity action, because the Law 80 claims do not surpass the jurisdictional minimum of $75,000. However, the Court assumes Plaintiffs' request for remand does not equate to a surrender of their state law employment discrimination claims amounting to $500,000. As such, this case meets the minimum jurisdictional amount required to pass the jurisdiction threshold for Section 1332 in terms of the quantity of the controversy.

▪ Plaintiffs allege that Defendant engages in substantial activity in Puerto Rico, and that this activity is sufficient to make it a corporate citizen of Puerto Rico for the purposes of diversity. These activities include obtaining authorization from the Commonwealth of Puerto Rico to do business in this jurisdiction, operating three retail locations in the Commonwealth, purchasing public liability insurance for its Commonwealth outlets, and retaining the services of a local accounting firm for compliance with local tax law. *See* Docket # 7 at 2 & 5–6. Moreover, Plaintiffs argue that because the bulk of the physical assets, inventory, and 50 employees for these three stores are in Puerto Rico, that this Court should consider Defendant as a citizen of the Commonwealth. Plaintiffs' allegations do not specify under which test they find Defendant to be a citizen for the purpose of diversity. However, their allegations, based on assets and employee presence, point to the locus of operations test.

The Court finds the locus of operations test inappropriate in this instance, because Defendant's three stores in Puerto Rico represent only a small portion of its global business, which is spreadout over 290 retail locations in 40 states, 6 foreign countries, Puerto Rico and Guam. *See* Docket # 9, Exhibit A. The three retail outlets operated by Defendant in Puerto Rico do

not constitute "... where the bulk of the corporation's actual physical operations are located," as required by the locus of operations test. *Diaz–Rodriguez,* 410 F.3d at 59. Furthermore, California, the state with the highest number of Defendant's stores (44), only represents 15% of their total retail outlets. *See* Docket # 9, Exhibit A.

■ On the other hand, Defendant, a major international clothing retailer, can easily be described as a far-flung corporation. Thus, the inquiry regarding Defendant's principal place of business should be analyzed through the nerve center test. *Id.* The evidence presented by Defendant shows it to be incorporated in California, with principal management operations also based in that same state. *See* Docket # 9, Exhibit A. Plaintiffs have not provided evidence that, beyond the day-to-day administration of its three stores located in the Commonwealth, Defendant controls and directs its corporate operations from Puerto Rico.

Using the nerve center test, the Court finds that Defendant meets the diversity requirements set forth in 28 U.S.C. § 1332. Furthermore, no procedural challenge has been made of Defendant's request for removal. As such, the Court finds that Defendant's principal place of business is California, not Puerto Rico, and that the complete diversity requirement has been satisfied.

Per all the foregoing, Defendant's petition for removal is **GRANTED** and Plaintiffs' request for a remand is **DENIED.**

**SO ORDERED.**