# United States Court of Appeals

## For the First Circuit

No. 22-1707

HOLSUM DE PUERTO RICO, INC.,

Plaintiff-Appellee,

v.

ITW FOOD EQUIPMENT GROUP LLC, d/b/a Peerless Food Equipment,

Defendant-Appellant,

COMPASS INDUSTRIAL GROUP, LLC; INSURANCE COMPANY ABC; ILLINOIS
TOOL WORKS, INC.; INSURANCE COMPANY DEF; INSURANCE COMPANY XYZ,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. John A. Woodcock, Jr.,* U.S. District Judge]

Before

Barron, Chief Judge,
Hamilton** and Thompson, Circuit Judges.

Carlos A. Rodríguez-Vidal, with whom Gabriel Quintero O'Neill
and Goldman Antonetti & Cordova LLC were on brief, for appellant.

Rafael A. Cox Alomar, with whom José M. Náter Vázquez and
Javier A. Sevillano Vicéns were on brief, for appellee.

*Of the District of Maine, sitting by designation.

**Of the Seventh Circuit, sitting by designation.

September 20, 2024

**HAMILTON**, **Circuit Judge**.  Cameo cookies are oval creme sandwich cookies made up of two biscuits with a layer of vanilla creme in between, and they are especially popular in Puerto Rico.[1] Plans to manufacture the cookies in Puerto Rico went awry when two custom-built machines created to make the cookies — one designed to sandwich the different layers together, and one designed to assemble the cookies into trays for packaging — kept jamming. Plaintiff-Appellee Holsum de Puerto Rico ("Holsum"), the company tapped to manufacture the cookies in Puerto Rico, sued the companies that made the machines: Defendant-Appellant Peerless Food Equipment ("Peerless") who made the sandwiching machine, and Defendant Compass Industrial Group, LLC ("Compass") who made the tray-loader machine.  Holsum prevailed in a jury trial on its claims against Compass but lost on its claims against Peerless.

This appeal presents no issues about the merits of the jury's verdict.  After the trial, though, Peerless asked the district court to order Holsum to pay the attorney fees that Peerless incurred in its successful defense.  Peerless argued that it was entitled to attorney fees both under a fee-shifting provision that it contends was part of the parties' contract and

---

[1] As we have previously noted, crème is not just "a fancy word for cream," but rather an entirely different food substance. Dumont v. Reily Foods Co., 934 F.3d 35, 41 (1st Cir. 2019).  In this opinion, we do not include the accent on the word because it is not featured on Cameo cookies' packaging.

under a Puerto Rico court rule covering attorney fees.  The district court denied Peerless's motion.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Holsum operates a large commercial bakery in Puerto Rico.  It bakes its own food products and contracts with other companies to bake their products, too.  In November 2016, Holsum agreed to bake, assemble, and package Cameo cookies for Mondelez International, Inc. ("Mondelez").

Holsum developed an intricate process for producing Cameo cookies.  Holsum planned to purchase the raw ingredients itself and to mix them according to a recipe provided by Mondelez. Holsum would then form the dough into individual biscuits, bake the biscuits in its ovens, and transfer them onto a cooling conveyor belt, which would then deliver the biscuits into a cookie-sandwiching machine.  Once there, half the biscuits would be laminated with a layer of vanilla creme.  A creme-topped biscuit would be pressed onto its cremeless counterpart to create a cookie sandwich.  Holsum planned to transfer each cookie sandwich into the tray-loader machine, which was designed to sort the cookies into 28-cookie trays for packaging.

To carry out this process, Holsum needed to purchase two new machines: a cookie-sandwiching machine and a tray-loader machine.  In January 2017, Holsum contracted to buy a cookie-sandwiching machine from Peerless.  Peerless drafted the

detailed contract that included technical specifications for the machine, payment terms, and shipping details.

At the very end of the contract, just above the signature line, was a section titled "Warranty."  This section featured two bullet points.  The first described briefly Peerless's warranty terms for the cookie-sandwiching machine.  The second included a link to a website that was said to include "a complete list of our Terms and Conditions and Warranty details."  Among the terms and conditions included at that link was a provision authorizing an award of attorney fees in favor of a party who prevailed in litigation or arbitration concerning the contract.[2]  The same website link that was featured in the contract also appeared on invoices that Peerless sent to Holsum during the project, with a notice in fine print saying: "The sale of products and services by Peerless Food Equipment are [sic] expressly limited to and made conditional on acceptance of its Terms and Conditions of Sale,

---

[2] The provision said:

If either party commences litigation or mutually agreed upon alternative dispute resolution concerning any provision of the Agreement, the prevailing party is entitled, in addition to the relief granted, to a reasonable sum for their attorney's fees in such litigation or mutually agreed upon alternative dispute resolution, provided that if each party prevails in part, such fees will be allocated in the manner as the court or arbitrator determines to be equitable in view of the relative merits and amounts of the parties' claims.

found at www.peerlessfood.com/about-us/purchaseterms.html ('Terms'). Any additional or different terms are hereby rejected and shall have no effect. Your submission of an order constitutes your acceptance of these Terms." The linked terms and conditions included the fee-shifting clause.

Holsum contracted with a different company, Compass, for a tray-loader machine. Holsum arranged for the two machines to be tested for compatibility. As it turned out, the machines did not work well together. Sizing and crispness issues caused the cookies to jam in the machines. Holsum blamed both Peerless and Compass, asserting that the companies were responsible for deficiencies in their respective machines.

Holsum sued only Compass at first, but it later filed an amended complaint to add Peerless as a defendant. Holsum alleged that both companies breached their respective contracts with it and were negligent in manufacturing their respective machines.

The case went to trial before a jury. As relevant to this appeal, the jury found (1) that Holsum proved Compass had breached its contract with Holsum and/or that Compass had acted negligently, but (2) that Holsum did not prove that Peerless either breached its contract with Holsum or had acted negligently.

After prevailing at trial, Peerless filed a motion seeking an award of attorney fees against Holsum. Peerless argued that it was entitled to attorney fees on two independent grounds.

First, it argued that the hyperlink included in the parties' contract incorporated into the contract the fee-shifting provision in favor of the prevailing party in litigation. Second, Peerless argued that it was entitled to attorney fees under Puerto Rico Rule of Civil Procedure 44.1(d), which authorizes an award of attorney fees against an opposing party who acts obstinately or frivolously during litigation. Peerless asserted that Holsum acted obstinately by filing a frivolous lawsuit against it and by refusing to settle the case before trial.

Holsum opposed the motion for attorney fees. It argued initially that the parties' contract was a "contract of adhesion" that ran afoul of public policy, thus making the fee-shifting provision unenforceable. Holsum also argued that it had not acted obstinately or frivolously in bringing its claims against Peerless. Holsum contended that its claims were reasonable even if it ultimately lost at trial.

Peerless replied to Holsum's opposition, expanding on the arguments it had made in its original motion. Holsum then filed a surreply with permission from the district court. The surreply raised a new argument: that the fee-shifting provision contained in the hyperlinked webpage was not actually incorporated into the parties' contract because the contract did not indicate clearly that the provisions listed in the referenced webpage were meant to be part of the agreement.

The district court agreed with Holsum's lack-of-incorporation theory and denied Peerless's motion. The court concluded that the parties' contract did not provide for attorney fees because the hyperlink did not put Holsum on notice that it would be bound by those additional terms. The district court also found that Holsum did not act obstinately or frivolously in bringing its lawsuit and insisting on a jury trial, so the court denied attorney fees under Rule 44.1(d). Peerless has appealed the denial of its motion for attorney fees.

## II. ANALYSIS

### A. THE FEE-SHIFTING PROVISION

The decisive contract question on appeal is whether the parties' contract incorporated by reference the fee-shifting provision included in the terms listed on the hyperlinked webpage. If the provision was incorporated, we should reverse, and if it was not, we should affirm the district court on the contract theory.[3]

---

[3] On appeal, Peerless also argues that the fee-shifting provision was incorporated into the parties' agreement because the hyperlink was also included in invoices that Peerless sent to Holsum. Given the way the fee-shifting issue was presented to the district court, we overlook the fact that this argument was first raised on appeal. The problem with the new argument is that the parties formed their contract for the Peerless machine before the first invoice was sent in March 2017. See ECF 36-2 (collecting payments made to Peerless). As a general rule, one party to a contract may not unilaterally alter its terms. E.g., Hollingsworth & Vose Co. v. A-P-A Transp. Corp., 158 F.3d 617, 619 (1st Cir.

Before reaching that issue, we must decide whether Holsum waived its argument that the fee-shifting provision was not incorporated by reference. We find no waiver because the district court reached and decided the issue. On the merits, we agree with the district court that the contract did not incorporate the fee-shifting provision.

## 1. WAIVER

In its initial opposition to Peerless's motion for attorney fees, Holsum argued that the parties' contract was one of adhesion and was against public policy. In its surreply, Holsum added another argument: that merely referencing the hyperlinked page did not incorporate the fee-shifting provision into the parties' contract. Peerless argues that Holsum waived this supplemental argument by failing to raise it from the beginning in the district court.

Ordinarily, parties may not raise arguments on appeal that they did not raise in the district court. E.g., Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). This waiver rule is

_____

1998). Nor does Peerless identify any authority suggesting a different conclusion under Puerto Rico law. Parties may of course write contracts in which they agree to allow unilateral modifications, but we find nothing in these parties' contract that would have authorized such a unilateral change by Peerless. The fine print in the invoices therefore adds nothing to Peerless's argument.

intended to ensure that opposing parties and trial judges have the opportunity to address and to decide issues in the first instance before an appellate court steps in.  See Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987).  But district courts have discretion to manage cases and to shape the issues presented to them.  When a district court addresses an argument, even one that a party has not presented squarely, that action undermines the justifications for enforcing what might otherwise be a party's waiver.  By addressing the issue, a district court can conduct any fact-finding it deems necessary, and the opposing party is given an opportunity to rectify any perceived errors, if necessary through a motion for reconsideration or an appeal.  Appellate courts may therefore address an issue not presented to the lower court if the lower court nevertheless addressed the issue.  E.g., Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 379 (1995).

We have recognized this exception to the waiver doctrine in a case mirroring this one.  In Negrón-Almeda v. Santiago, 528 F.3d 15 (1st Cir. 2008), the defendants did not raise an argument in the district court until their surreply.  But because the district court addressed the argument, we rejected a waiver argument: "The rule is that if an argument is raised belatedly in the district court but that court, without reservation, elects to decide it on the merits, the argument is deemed preserved for later appellate review."  Id. at 26.

Holsum raised this argument in its surreply to Peerless's motion for attorney fees. The district court could have chosen not to address it. See D.P.R. Civ. R. 7(d) ("Parties shall not file or request leave to file a sur-reply unless the reply raises new arguments not previously presented in the movant's opening motion."). But in this case, the district court exercised its discretion and addressed the issue, basing its ultimate decision on the failure-to-incorporate theory. Because the district court did so, the theory is properly before us.

### 2. PUERTO RICO LAW ON INCORPORATION BY REFERENCE

On the merits of this theory, Peerless argues that its form contract referred to a webpage that included, among other terms and conditions, a fee-shifting provision. The district court rejected this argument, concluding that the contract's language did not "clearly communicate" that the terms and conditions in the hyperlinked webpage were meant to be incorporated into the contract and binding on Holsum in addition to Peerless. We review de novo a district court's interpretation of written contractual provisions. Dukes Bridge LLC v. Beinhocker, 856 F.3d 186, 189 (1st Cir. 2017); see also S.L.G. Irizarry v. S.L.G. García, 155 P.R. Offic. Trans. 713, 727–30 (2001) (analyzing contract interpretation issue without mentioning deference to district court's legal conclusions but noting that under Puerto Rico law "appellate courts will not disturb the findings of fact" drawn by

- 11 -

a trial court unless the "court is shown to be biased, prejudiced or partial").

"As this case is in federal court by virtue of diversity jurisdiction, state law provides the substantive rules of our decision." Lawrence Gen. Hosp. v. Continental Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024); Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 11 n.5 (1st Cir. 2007) ("For purposes related to diversity jurisdiction, Puerto Rico is deemed to be the functional equivalent of a state." (citing 28 U.S.C. § 1332(e) and Díaz-Rodríguez v. Pep Boys Corp., 410 F.3d 56, 58 1st Cir. 2005))). Looking to Puerto Rico law, we try to predict how the Commonwealth's highest court would decide this case. Id.

The Puerto Rico Civil Code provides some overarching principles for contract interpretation. See 31 L.P.R.A. §§ 3471-79. Above all, these rules instruct courts to interpret contracts in line with the parties' real intentions. Marcial v. Tomé, 144 P.R. Offic. Trans. 522, 537 (1997). A contract's text serves as the starting point for that inquiry. If the text is clear, then courts should adhere to the text absent unusual circumstances. Id. at 536; 31 L.P.R.A. § 3471. Also relevant to determining the parties' intentions are their actions while drafting the contract and performing under it. 31 L.P.R.A. §§ 3471, 3472. But if the text is unclear, and where the parties' actions do not resolve the ambiguity, courts must not interpret

- 12 -

ambiguous provisions in a way that favors the party responsible for the ambiguity. Id., § 3478.

In line with other jurisdictions, the Puerto Rico Supreme Court has recognized that parties may incorporate terms into a contract by reference. Caguas Plumbing, Inc. v. Continental Constr. Corp., 155 P.R. Offic. Trans. 744, 751 (2001) (noting that a contract incorporated a separate contract "by reference"); Mattei Nazario v. Vélez & Asociados, 145 P.R. Offic. Trans. 508, 524 (1998) (same). Puerto Rico's Civil Code does not provide specific guidance for determining when a contract that references extraneous provisions incorporates those terms into the agreement. The parties have not identified any Puerto Rican cases that squarely address this issue, nor have we found any. Other jurisdictions in the First Circuit hold that the contract "must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." Awuah v. Coverall North America, Inc., 703 F.3d 36, 43 (1st Cir. 2012) (Massachusetts law) (quoting NSTAR Elec. Co. v. Dep't of Pub. Utils., 462 Mass. 381, 394, 968 N.E.2d 895, 905 (2012)); see also Dulong v. Merrimack Mutual Fire Ins. Co., 272 A.3d 120, 127 (R.I. 2022) (noting that incorporation by reference is allowed where a contract "demonstrate[s] the parties intended to incorporate" the referenced document) (quoting Management Capital, L.L.C. v. F.A.F., Inc., 209 A.3d 1162, 1174, 1175 (R.I. 2001))); Estate of

- 13 -

<u>Sweet</u>, 519 A.2d 1260, 1263 (Me. 1987) (noting that a Maine statute permitted documents to be incorporated by reference into a will so long as the will "manifests this intent and describes the writing sufficiently to permit its identification" (quoting Me. Rev. Stat. Ann. tit. 18-A, § 2-510)).  At least two cases in the District of Puerto Rico have endorsed the approach we applied under Puerto Rico law in <u>Awuah</u>.  <u>See</u> <u>Comite Fiestas De La Calle San Sebastian, Inc.</u> v. <u>Cruz</u>, 170 F. Supp. 3d 271, 274 (D.P.R. 2016); <u>Bonilla Davila</u> v. <u>UBS Fin. Servs. Inc. of Puerto Rico, Inc.</u>, No. 19-1689CCC, 2019 WL 13262540, at *1 (D.P.R. Dec. 12, 2019).

This practice is consonant with the Puerto Rico Civil Code's rules for contract interpretation.  Requiring a contract to communicate clearly the incorporation of any additional provisions comports with the Code's penchant for honoring the parties' intent — if the text of the contract clearly indicates that additional provisions were meant to be incorporated, then generally a court could assume that the parties intended to incorporate those provisions.  We agree with the district court that this approach is consistent with Puerto Rico law and apply it to this case.

### 3. APPLICATION TO THIS CASE

At the very end of the parties' written contract, on a form prepared by Peerless, and just above the signature line, was

- 14 -

a section entitled "Warranty." This section included two bullet points:

- Peerless warrants that it will convey the Products free and clear of all liens, security interests and encumbrances created by, through or under Peerless. Peerless further warrants that for a period of one year from the date of delivery (the "Warranty Period"), under normal use and given proper installation and maintenance as determined by Peerless, the Products: (a) will conform to mutually agreed upon written specifications or other descriptions; and (b) will be free from substantial defects in material and workmanship.
- For a complete list of our Terms & Conditions and Warranty details, please visit our website at http://www.peerlessfood.com/aboutus/purchase-terms.html

The hyperlink in the second bullet point led to a webpage that listed additional terms and conditions, including the fee-shifting provision.

We agree with the district court that the fee-shifting provision available through the hyperlink was not incorporated into the parties' contract. The contract does not clearly communicate that the parties intended to incorporate into the contract the additional terms and conditions found in the hyperlinked webpage. Most significant is the text used to reference the hyperlinked webpage. The contract, drafted by Peerless, said that "a complete list of our [(i.e., Peerless's)] Terms & Conditions" was available on the hyperlinked webpage.

This language, especially because it was placed in the "Warranty" section of the Peerless form contract, does not clearly

- 15 -

communicate that both parties, including Holsum, would be bound by those terms and conditions. Rather, this statement is susceptible to other interpretations. For example, one might reasonably infer that Peerless meant to represent only that it would uphold certain terms and conditions throughout the contractual relationship. That interpretation is supported by the fact that the hyperlink in the second bullet point followed Peerless's representations in the first bullet point, which dealt with points that Peerless was warranting about its products, including that it would "convey the Products free and clear of all liens, security interests and encumbrances" and ensure quality. This section did not convey a clear message that, by accepting the offer, Holsum would agree to bind itself to further promises (including the fee-shifting term).

At the very least, this language does not approach the degree of clarity that we and the District of Puerto Rico have held sufficient to incorporate additional terms by reference. See, e.g., Awuah, 703 F.3d at 43 (finding incorporation where contract said that offeree would "become liable . . . for all of the obligations imposed by" other referenced agreement); Comite Fiestas, 170 F. Supp. 3d at 274 (finding incorporation of agreements reached at a hearing where contract said that "parties agree to execute this Contract under . . . the agreements reached by the parties in the hearing held on January 7, 2015"); Bonilla Davila, 2019 WL 13262540, at *1 (finding incorporation of a second

- 16 -

agreement where the original contract said that offeree had "read, underst[ood], and agree[d] to the terms and conditions" of the second agreement).

In this case, the parties' conduct before, during, and after contractual negotiations does not clarify what the parties intended the ambiguous text to mean. Holsum and Peerless have worked together for about forty years. Neither side identified evidence that this fee-shifting provision had been invoked before.

In sum, the contract did not clearly communicate that the fee-shifting provision was meant to be incorporated into the contract by reference. This ambiguity weighs against Peerless because, according to 31 L.P.R.A. § 3478, we interpret the ambiguity against the drafter of the ambiguous provision. We agree with the district court that the parties' contract did not incorporate the fee-shifting provision.

## B. RULE 44.1(d)

Peerless also moved for attorney fees under Puerto Rico Rule of Civil Procedure 44.1(d), which provides: "In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." See Jarra Corp. v. Axxis Corp., 155 P.R. Offic. Trans. 764, 779 (2001) (providing official translation of Rule 44.1(d)). This Court has long held that federal courts exercising diversity

jurisdiction must treat Puerto Rico Rule of Civil Procedure 44.1(d) as substantive and thus give it effect under the principles of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). See, e.g., Gómez v. Rodríguez-Wilson, 819 F.3d 18, 23 (1st Cir. 2016); Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994).

For a district court to award attorney fees under this rule due to obstinacy, the district court must find that a party engaged in actions that (a) engendered additional unnecessary litigation, (b) prolonged existing litigation unnecessarily, or (c) forced the other party to incur expenses in the pursuit of avoidable tasks. Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir. 1994). Due to the findings inherent in the Rule 44.1(d) obstinacy analysis, we review for abuse of discretion a district court's decision to grant or deny attorney fees. Marshall v. Perez Arzuaga, 828 F.2d 845, 852 (1st Cir. 1987).

Peerless argues that Holsum acted obstinately by dragging Peerless into this case by alleging baseless claims against it and then by refusing to settle the case before trial. The district court rejected both theories. We address them in turn.

### 1. FRIVOLOUS CLAIMS?

The district court found that Holsum's contract and negligence claims against Peerless both presented triable issues for a jury. First, the court explained that Holsum's

breach-of-contract claim presented multiple factual issues involving Peerless's design and installation of the sandwiching machine. Finding Holsum's negligence claim to be "thinner" than its contract claim, the district court nevertheless concluded that Holsum's negligence claim also raised factual issues about the duty that Peerless owed to Holsum irrespective of its contractual obligations. Perhaps more important, the district court found that Peerless did not show that it incurred unnecessary additional expenses defending against Holsum's weaker negligence claim.

On appeal, and contrary to the district court's findings, Peerless argues that Holsum's contract claim was dead on arrival because Peerless had upheld its end of the contract and any delays were due to setbacks that Holsum had caused itself. To our ears, this sounds like a classic factual dispute suitable for a jury trial. While Peerless disagrees with the district court's factual findings that Holsum's claims were not frivolous, it does not explain how the court abused its discretion. See Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 336 (1st Cir. 1997) ("[A]n abuse of discretion occurs 'when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'" (quoting Foster v. Mydas Assocs., Inc., 943 F.2d 139, 143 (1st Cir. 1991))).

The district court offered sound support for its findings. Among the triable factual issues it identified was a dispute as to who was responsible for the cookies jamming in the Peerless sandwiching machine. At trial, Peerless presented testimony attributing the malfunction to Holsum's failure to provide accurate measurements of a Cameo cookie. Holsum, on the other hand, offered testimony that Peerless caused the malfunction by designing the machine using a Canadian-produced Cameo cookie, which was apparently slightly different in size. As this example illustrates, each party had its own interpretation of the facts. The parties presented evidence in support of their arguments. The jury ultimately found in favor of Peerless, but losing at trial does not mean a party's claims or defenses were frivolous. E.g., Dopp, 38 F.3d at 1254 (reversing award of attorney fee for obstinacy under Rule 44.1(d)).

Peerless's argument regarding Holsum's negligence claim does not fare any better. Again, Peerless objects to the district court's findings but does not identify an abuse of discretion. As the district court identified, Holsum presented some evidence supporting its allegation that Peerless owed Holsum a duty beyond its contractual obligations. Peerless also has not tried to rebut the district court's finding that Peerless did not incur additional expenses defending against both claims rather than only Holsum's stronger contract claim.

## 2. **SETTLEMENT**

Peerless also argues that Holsum acted obstinately by refusing to settle before trial. There is precedent for a fee award under Rule 44.1(d) based on conduct in settlement negotiations, but only, as far as we can tell, based on genuine bad faith. See Gómez, 819 F.3d at 24-25 (reversing denial of fee award where defendant reneged on initial settlement agreement and later failed to comply with agreements he had reached); accord, Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 33-34 (1st Cir. 2002) (reversing fee award and stating: "key issue is not whether or not the defendant's proposed settlement amount approaches plaintiff's claimed damages, but whether the parties engaged in good faith negotiations," and that alleged insufficiency of defendant's offer was "not tantamount to bad faith"). Obstinacy must be assessed in light of the overall circumstances of the case. Gómez, 819 F.3d at 24 (citing Dopp, 38 F.3d at 1253).

In this case, Peerless has not shown such unusual conduct. For two reasons, we agree with the district court that Peerless has not shown entitlement to fees under Rule 44.1(d).

First, Peerless has not told the district court or this court anything substantive about the parties' settlement negotiations. What did Peerless offer? What did Holsum demand? When? How strong or weak did the parties' positions appear at the

relevant time(s)?  How did the parties react to each other's positions?  Neither the district court nor we could find Holsum to have acted in bad faith in settlement negotiations without such detailed information.

By comparison, in Correa, we reversed a district court's award of attorney fees under Rule 44.1(d) based on settlement conduct.  We did so by looking in detail at the evolution of the case and the parties' shifting settlement and litigation positions.  298 F.3d at 30-34.  Peerless did not provide the district court or this court with the kind of information needed to assess this issue of obstinacy in settlement negotiations.

Similarly, in Dopp we also reversed an award of attorney fees under Rule 44.1(d) that had been based in part on supposed obstinacy in settlement negotiations.  The district court had found the defendant had stood by a "ludicrous" underestimate of potential damages, but we pointed out that the plaintiff had badly overvalued his potential damages.  38 F.3d at 1254-55.  We pointed out that "an obstinacy determination must necessarily take the whole picture into account," and that "[t]he lemon should not be allowed to reap a reward for calling the grapefruit sour."  Id. at 1255 n.18 (quoting Quinones-Pacheco v. American Airlines, Inc., 979 F.2d 1, 8 n.9 (1st Cir. 1992) (affirming denial of fee award under Rule 44.1(d)).  Peerless did not provide information on that "whole picture."

Second, and more generally, exercising in good faith one's Seventh Amendment right to trial by jury is not obstinacy. See id. at 1254 (explaining that, "as a general rule, litigation of a novel but colorable claim cannot, by itself, provide the basis for a finding of obstinacy"). In our civil justice system, the trial of genuine and good-faith disputes is a feature, not a bug. Peerless has not shown that Holsum was engaging in the sort of bad-faith conduct, in settlement negotiations or in other aspects of the lawsuit, that could justify an award of attorney fees under Rule 44.1(d).

### III. CONCLUSION

The judgment of the district court is **AFFIRMED**.